**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

| | |
|---|---|
| Beth Wiley and Kevin Wiley, Co-Trustees for the Next-of Kin of Marquisha Wiley, decedent, Chassity Ashford, Sherron Ashford, Wayne Germond, Nicholas Guerrero, Danielle Hernandez, Charisma Kyles, Jordan Larson, Keeshara Perry, Paris Pollard, Latosha Skinner, Estan Tyler, Andrea Weathersby, Ernest Whitmore, and Kevaughn Wiley,<br><br>        Plaintiffs,<br><br>    v.<br><br>Fleet Farm LLC, Fleet Farm Group LLC, Fleet Farm Wholesale Supply Co. LLC, and Truck Yard – SP LLC,<br><br>        Defendants. | Case No.:  0:24-cv-04135-LMP-JFD |

**MEMORANDUM OF LAW IN SUPPORT OF**
**FLEET FARM'S MOTION TO DISMISS**

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ......................................................................................... iv

INTRODUCTION ...................................................................................................... 1

BACKGROUND ........................................................................................................ 2

I.    Fleet Farm's firearm sales are subject to a comprehensive federal
      regulatory scheme ......................................................................................... 2

II.   Fleet Farm sells a firearm to Jerome Horton that is later used by a third
      party in a shooting. ....................................................................................... 5

LEGAL STANDARD .................................................................................................. 7

ARGUMENT ........................................................................................................... 7

I.    The PLCAA preempts Plaintiffs' negligence and negligent-entrustment
      claims, and their aiding-and-abetting theory. ................................................ 7

      A.    The PLCAA preempts Plaintiffs' negligence claim. ............................. 9

      B.    The PLCAA preempts Plaintiffs' negligent-entrustment claim ........... 11

      C.    The PLCAA preempts Plaintiffs' aiding-and-abetting theory. ............ 12

II.   The negligence claim fails because Plaintiffs do not allege Fleet Farm
      owed them any recognized common-law duty or violated the laws cited to
      support the claim. ....................................................................................... 13

      A.    Plaintiffs do not allege a recognized common-law duty of care ........... 13

      B.    Plaintiffs have not alleged plausibly that Fleet Farm violated any of the
            statutes cited in support of their negligence claim. ........................... 15

III.  The negligence per se claim fails because the underlying statutes do not
      protect particular classes of individuals or create private causes of action,
      and Plaintiffs have not alleged plausibly that Fleet Farm violated any cited
      statutes. ..................................................................................................... 19

      A.    Negligence per se may not be premised on statutes protecting the public
            at large ........................................................................................... 19

      B.    Negligence per se may not be premised on statutes that do not create a
            private cause of action. .................................................................... 20

C.      Plaintiffs have not alleged plausibly that Fleet Farm violated any of the statutes cited in support of their negligence per se claim. ................................... 22

IV.    Plaintiffs' aiding-and-abetting theory fails as a matter of law. .............................. 22

V.     Plaintiffs' negligent-entrustment claim is not recognized by Minnesota law. ......................................................... 23

VI.    All of Plaintiffs' claims fail because they do not plead a viable proximate-causation theory. ...................................................................................... 26

CONCLUSION ................................................................................ 29

## TABLE OF AUTHORITIES

**Cases**                                                                                          **Page(s)**

*Alexander v. 1328 Uptown, Inc.*,
    2020 WL 1644246 (D. Minn. Apr. 2, 2020).............................................................. 19

*Ashley Cnty. v. Pfizer, Inc.*,
    552 F.3d 659 (8th Cir. 2009) ......................................................... 14, 28, 29

*Axelson v. Williamson*,
    324 N.W.2d 241 (Minn. 1982)........................................................... 24, 26

*Bachman's v. Florists' Mut. Ins. Co.*,
    525 F. Supp. 3d 984 (D. Minn. 2021) ............................................................... 3

*Bell v. Pfizer, Inc.*,
    716 F.3d 1087 (8th Cir. 2013) ....................................................................... 13

*Bernethy v. Walt Failor's, Inc.*,
    653 P.2d 280 (Wash. 1982).......................................................................... 14

*Bertelsen v. Walker*,
    2020 WL 11039168 (Minn. Dist. Ct. Nov. 10, 2020)................................. 24

*Corporan v. Wal-Mart Stores E. LP*,
    2016 WL 3881341 (D. Kan. July 18, 2016) ............................................... 21

*Corrie v. Caterpillar, Inc.*,
    403 F. Supp. 2d 1019 (W.D. Wash. 2005).................................................. 14

*Delana v. CED Sales, Inc.*,
    486 S.W.3d 316 (Mo. 2016) ................................................................... 8, 10

*Dep't of Homeland Sec. v. MacLean*,
    574 U.S. 383 (2015)..................................................................................... 10

*Doe 169 v. Brandon*,
    845 N.W.2d 174 (Minn. 2014)..................................................................... 26

*Doyle v. Combined Sys., Inc.*,
    2023 WL 5945857 (N.D. Tex. Sept. 11, 2023)....................................... 9, 11

*Elder v. Allstate Ins. Co.*,
    341 F. Supp. 2d 1095 (D. Minn. 2004) ....................................................... 20

*Estate of Kim ex rel. Alexander v. Coxe*,
   295 P.3d 380 (Alaska 2013)................................................................. 8, 10

*Fenrich v. The Blake Sch.*,
   920 N.W.2d 195 (Minn. 2018)............................................................ 14, 15

*Gradjelick v. Hance*,
   646 N.W.2d 225 (Minn. 2002)................................................................. 26

*Green Plains Otter Tail, LLC v. Pro-Env't, Inc.*,
   953 F.3d 541 (8th Cir. 2020) ............................................................. 26, 27

*Hack v. Johnson*,
   275 N.W. 381 (Minn. 1937)................................................................ 27, 28

*Haynes v. Abdelwahed*,
   1997 WL 406644 (Minn. Ct. App. July 22, 1997)...................................... 20

*Hendrick v. Academy I, LP*,
   2024 WL 4594958 (Mo. Ct. App. Oct. 29, 2024)......................................... 9

*Hilligoss v. Cross Cos.*,
   228 N.W.2d 585 (Minn. 1975)................................................................. 27

*Ileto v. Glock, Inc.*,
   565 F.3d 1126 (9th Cir. 2009) .............................................................. 8, 9

*Islam v. Creative Tours Micronesia, Inc.*,
   36 F.3d 1102, 1994 WL 477543 (9th Cir. 1994) ........................................ 25

*Jefferies v. Dist. of Columbia*,
   916 F. Supp. 2d 42 (D.D.C. 2013) ........................................................... 10

*Johnson v. Johnson*,
   611 N.W.2d 823 (Minn. Ct. App. 2000)................................................. 24, 25

*Knight v. Wal-Mart Stores, Inc.*,
   889 F. Supp. 1532 (S.D. Ga. 1995)........................................................... 14

*Kronzer v. First Nat'l Bank of Minneapolis*,
   235 N.W.2d 187 (Minn. 1975)............................................................ 19, 22

*Labzda v. Purdue Pharma, L.P.*,
   292 F. Supp. 2d 1346 (S.D. Fla. 2003) .................................................... 15

*Liedtke v. Runningen*,
 2016 WL 11491381 (D. Minn. June 20, 2016) .......................................................... 17

*Lubbers v. Anderson*,
 539 N.W.2d 398 (Minn. 1995) ................................................................................. 26

*Madgett Law, LLC v. Pravati Capital, LLC*,
 706 F. Supp. 3d 831 (D. Minn. 2023) ........................................................................ 6

*McDonough v. Anoka Cnty.*,
 799 F.3d 931 (8th Cir. 2015) .................................................................................... 7

*In re Medtronic, Inc. Sprint Fidelis Leads Prods. Liab. Litig.*,
 592 F. Supp. 2d 1147 (D. Minn. 2009) ................................................................... 21

*Meyer v. Lindala*,
 675 N.W.2d 635 (Minn. Ct. App. 2004) ................................................................. 21

*Nelson v. Am. Fam. Mut. Ins. Co.*,
 2013 WL 5745384 (D. Minn. Oct. 23, 2013) .......................................................... 21

*In re Netgain Tech., LLC*,
 2022 WL 1810606 (D. Minn. June 2, 2022) ...................................................... 13, 20

*Opay v. Howard Lake Liquor Store*,
 1995 WL 34838 (Minn. Ct. App. Jan. 31, 1995) .................................................... 20

*Parsons v. Colt's Mfg. Co.*,
 2020 WL 1821306 (D. Nev. Apr. 10, 2020) .............................................................. 9

*People v. Sturm, Ruger & Co.*,
 309 A.D.2d 91 (N.Y. Sup. Ct. 2003) .................................................................. 28, 29

*Phillips v. Lucky Gunner, LLC*,
 84 F. Supp. 3d 1216 (D. Colo. 2015) ...................................................................... 25

*RSM, Inc. v. Herbert*,
 466 F.3d 316 (4th Cir. 2006) ................................................................................... 20

*Samuel v. Ormoia Media Network*,
 569 F. Supp. 3d 904 (D. Minn. 2021) ..................................................................... 20

*Se. Stud & Components, Inc. v. Am. Eagle Design Build Studios, LLC*,
 588 F.3d 963 (8th Cir. 2009) ..................................................................................... 2

*Sellers v. City of St. Paul*,
  1995 WL 238765 (Minn. Ct. App. Apr. 25, 1995) ..................................................... 17

*Shawano Gun & Loan v. Hughes*,
  2010 WL 3062947 (E.D. Wis. Aug. 2, 2010) ............................................................. 20

*Smits as Tr. for Short v. Park Nicollet Health Servs.*,
  979 N.W.2d 436 (Minn. 2022) .................................................................................. 13

*Soto v. Bushmaster Firearms Int'l, LLC*,
  2016 WL 8115354 (Conn. Super. Ct. Oct. 14, 2016) .......................................... 11, 12

*Soto v. Bushmaster Firearms Int'l, LLC*,
  202 A.3d 262 (Conn. 2019) ....................................................................................... 25

*Soto v. Shealey*,
  331 F. Supp. 3d 879 (D. Minn. 2018) ....................................................................... 24

*State of Minnesota v. Fleet Farm LLC*,
  679 F. Supp. 3d 825 (D. Minn. 2023) ................................................................... 2, 12

*State v. Back*,
  775 N.W.2d 866 (Minn. 2009) .................................................................................. 15

*Valentine v. On Target, Inc.*,
  727 A.2d 947 (Md. Ct. App. 1999) ....................................................................... 14, 15

*Vind v. McGuire*,
  2013 WL 6152312 (Minn. Ct. App. Nov. 25, 2013) ................................................ 21

*Witzman v. Lehrman, Lehrman & Flom*,
  601 N.W.2d 179 (Minn. 1999) .................................................................................. 22

*Young v. Bryco Arms*,
  821 N.E.2d 1078 (Ill. 2004) ........................................................................... 27, 28, 29

*Zayed v. Associated Bank, N.A.*,
  779 F.3d 727 (8th Cir. 2015) ............................................................................... 22, 23

*Zayed v. Associated Bank, N.A.*,
  913 F.3d 709 (8th Cir. 2019) .......................................................................... 7, 22, 23

**Statutes**

15 U.S.C. § 7901 ........................................................................................ 7

15 U.S.C. § 7902 ........................................................................................ 7

15 U.S.C. § 7903 ................................................................................. *passim*

18 U.S.C. § 921 ........................................................................................ 7

18 U.S.C. § 922 ................................................................................. *passim*

18 U.S.C. § 923 ................................................................................. *passim*

18 U.S.C. § 924 ........................................................................ 16, 17, 21, 22

Minn. Stat. § 609.01 ................................................................................ 20

Minn. Stat. § 624.7132 ................................................................. 16, 17, 22

Minn. Stat. § 624.7133 ...................................................................... 16, 17

**Other Authorities**

27 C.F.R. § 478.21 .............................................................................. 18, 21

27 C.F.R. § 478.41-.60 .............................................................................. 3

27 C.F.R. § 478.50 .................................................................................... 3

27 C.F.R. § 478.99 .................................................................................... 3

27 C.F.R. § 478.102 ............................................................................... 3, 4

27 C.F.R. § 478.123 .................................................................................. 4

27 C.F.R. § 478.124 ................................................................... 3, 18, 19, 21

27 C.F.R. § 478.125 .................................................................................. 4

27 C.F.R. § 478.126a ............................................................................... 4

28 C.F.R. § 25.6 ....................................................................................... 4

57A Am. Jur. 2d Negligence § 302 ........................................................ 24

65 C.J.S. Negligence § 156 ..................................................................... 24

H.R. Rep. No. 109-124 ........................................................................... 11, 12, 29

Restatement (Second) of Torts § 286 .................................................................. 19

Restatement (Second) of Torts § 288 .................................................................. 19

Restatement (Second) of Torts § 390 ............................................................. 24, 25

<u>INTRODUCTION</u>

On October 10, 2021, a tragic shooting occurred at the Seventh Street Truck Park bar in Saint Paul. The perpetrators—those who fired the guns and illegally trafficked them—have been criminally convicted for their roles in the shooting. The question here is not whether these perpetrators have been appropriately punished. Instead, it is whether a retail seller of one firearm used in the shooting may be held civilly liable for this crime, when federal law shields retailers from such liability and the sale in question was followed by at least three unforeseeable criminal acts. The answer is no: the law does not permit liability to be imposed on a commercial retailer under these circumstances, so Plaintiffs' negligence, negligence per se, and negligent-entrustment claims against Defendants Fleet Farm LLC, Fleet Farm Group LLC, and Fleet Farm Wholesale Supply Co. LLC ("Fleet Farm") fail as a matter of law.

To start, Plaintiffs' negligence and negligent-entrustment claims are preempted by the Protection of Lawful Commerce in Arms Act ("PLCAA"), which generally prohibits civil actions against firearm sellers for harms allegedly resulting "from the criminal or unlawful misuse of a [firearm] by … a third party." 15 U.S.C. § 7903(5)(A). Plaintiffs' claims also fail on the merits. Plaintiffs' negligence claim does not allege a viable duty of care. Plaintiffs' negligence per se claim is premised on laws that do not protect a particular class of individuals or provide a private cause of action. And both the negligence and negligence per se claims fail because Plaintiffs do not plausibly allege Fleet Farm violated any of the laws cited as bases for the claims. These claims also fail to the extent they are premised on an aiding-and-abetting theory because Plaintiffs do not allege Fleet Farm

actually knew of or took "affirmative steps" to assist Horton's criminality.  Similarly, Plaintiffs' negligent-entrustment claim fails because it arises from a sale, Plaintiffs cannot allege Horton was "incompetent" or "inexperienced," and Fleet Farm has no duty to investigate customers beyond what is mandated by federal law.  And all of Plaintiffs' claims fail because multiple superseding events establish Fleet Farm did not proximately cause Plaintiffs' injuries.[1]

For these reasons, Plaintiffs' claims against Fleet Farm should be dismissed with prejudice.

<u>BACKGROUND</u>

**I.    Fleet Farm's firearm sales are subject to a comprehensive federal regulatory scheme.**

This lawsuit arises from Fleet Farm's commercial firearm sale to Jerome Horton, who pleaded guilty in federal court to making "false statements in the purchase of firearms."  Compl. ¶¶ 38, 64.  Fleet Farm operates seventeen stores in Minnesota, and, pursuant to federal law, each is registered as a federal firearm licensee ("FFL").  *Id.* ¶¶ 18,

---

[1] In *State of Minnesota v. Fleet Farm LLC*, 679 F. Supp. 3d 825 (D. Minn. 2023), Judge Tunheim rejected several arguments similar to some—but not all—of the arguments advanced here.  The analysis in *State of Minnesota* is distinguishable, and is based on different allegations and legal theories than those raised by Plaintiffs here.  For example, Judge Tunheim's PLCAA analysis did not have the benefit of recent persuasive rulings from multiple courts, the analysis of the scope of Minnesota's negligence per se doctrine did not address the authorities offered in this memorandum, the causal chain alleged in the *State of Minnesota* complaint is different from the lengthier causal chain alleged here, and this case involves different questions of duty and foreseeability.  To the extent certain arguments here are similar to those raised in *State of Minnesota*, the rejection of those legal arguments was error.  In any event, "one district court is not bound by the holdings of others, even those within the same district."  *Se. Stud & Components, Inc. v. Am. Eagle Design Build Studios, LLC*, 588 F.3d 963, 967 (8th Cir. 2009).

38; 27 C.F.R. § 478.50.  Fleet Farm stores are subject to myriad federal laws, regulations, and guidelines.

The federal Gun Control Act ("GCA") creates "a nationwide licensing scheme for firearm dealers."  Compl. ¶ 39.  The GCA and its implementing regulations are enforced by the Bureau of Alcohol, Tobacco, Firearms, and Explosives ("ATF").  Among other things, the GCA requires persons wanting to sell firearms to obtain a federal license, and prohibits licensees from selling firearms to certain individuals, including convicted felons. 18 U.S.C. §§ 922(d), 923; 27 C.F.R. §§ 478.41-.60, 478.99.

Before transferring a firearm, FFLs must require customers to complete an ATF Form 4473, and the customer information provided on the Form 4473 is submitted to the federal "national instant criminal background check system" ("NICS").  18 U.S.C. § 922(t)(1); 27 C.F.R. §§ 478.102, 478.124; Compl. ¶¶ 42-43.  Among other things, Form 4473s require a customer to certify they are "the actual transferee/buyer of the firearm(s)." Decl. of Andrew W. Davis ("Davis Decl."), Ex. A ("Form 4473") at 1[2]; Compl. ¶ 43.  FFLs must also "determine the lawfulness of the transaction," "maintain proper records of the transaction," and "stop the transaction if there is reasonable cause to believe" the customer "is prohibited from receiving or possessing a firearm."  Form 4473 at 3; Compl. ¶ 48.  An FFL must maintain copies of all Form 4473s for completed transactions, as well as for

---

[2] ATF Forms 3310.4 and 4473 are referenced in the complaint, Compl. ¶¶ 42-43, 48, 51, so may be considered.  *Bachman's v. Florists' Mut. Ins. Co.*, 525 F. Supp. 3d 984, 986 (D. Minn. 2021).

transactions that were denied or cancelled by NICS or not completed for any reason.  Form 4473 at 3; 27 C.F.R. §§ 478.123(b), 478.125(e); Compl. ¶ 52.

Before completing any transaction, FFLs must contact NICS, which "advise[s] … whether the system finds any information that the transfer to, or receipt by, the transferee is prohibited by law."  Form 4473 at 6; 18 U.S.C. § 922(t)(1)(A).  NICS sends the FFL a "Proceed," "Denied," "Cancelled," or "Delayed" message.  "Proceed" authorizes the transaction, "Denied" or "Cancelled" prohibits the transaction, and "Delayed" prohibits the transaction "unless 3 business days have elapsed" and NICS "has not advised the [FFL] that the [customer]'s receipt or possession of the firearm would be in violation of law." Form 4473 at 6; 27 C.F.R. § 478.102(a)(2)(ii); 28 C.F.R. § 25.6(c)(1)(iv)(A)-(C).[3]

Regulations also require FFLs to submit an ATF Form 3310.4 to report transferring to a customer "at one time or during any five consecutive business days, two or more pistols, or revolvers, or any combination of pistols and revolvers totaling two or more."  27 C.F.R. § 478.126a; Compl. ¶ 51; Davis Decl., Ex. B ("Form 3310.4").  The Form 3310.4 is generated automatically, and FFLs must submit the Form to ATF and local law enforcement, retaining one copy for their records.  18 U.S.C. § 923(g)(3)(A); 27 C.F.R. § 478.126a; Compl. ¶ 51.  The generation of a Form 3310.4 has no bearing on whether an FFL may proceed with a sale, as regulations contemplate FFLs selling multiple firearms to an individual during a single transaction or within a five-business-day period.  27 C.F.R.

---

[3] Fleet Farm will only transfer a firearm after receiving a "Proceed" message from NICS or the relevant approving agency.

§ 478.126a; Form 3310.4 at 2.  And Minnesota and federal law impose no limits on the number of firearms an individual may purchase during any given time period.

## II.    Fleet Farm sells a firearm to Jerome Horton that is later used by a third party in a shooting.

On October 10, 2021, Devondre Phillips and others engaged in a shooting exchange at the Seventh Street Truck Park bar in Saint Paul, injuring a number of patrons and resulting in Marquisha Wiley's death.  Compl. ¶¶ 24, 35.  Plaintiffs allege one of the firearms used in this tragedy was purchased by Jerome Horton from Fleet Farm's Blaine store on July 31, 2021.  *Id.* ¶ 62.  Specifically, Plaintiffs allege: (1) Horton purchased a Mossberg handgun from Fleet Farm on July 31, 2021; (2) Horton "transferred" the handgun to Gabriel Young-Duncan; (3) the handgun later came into Phillips's possession, who was "ineligible to possess firearms"; and (4) Phillips fired the handgun during the Truck Park shooting.  *Id.* ¶¶ 61-62.

As for Fleet Farm's July 31 sale to Horton, Plaintiffs allege the Mossberg was one of twenty-four firearms Horton purchased from multiple Fleet Farm stores between June and October 2021, and one of eight purchased between July 24 and 31.  *Id.* ¶¶ 55-56.  Plaintiffs allege Horton's purchases were suspicious due to "[t]he sheer volume," because he mostly purchased 9mm handguns, because "Fleet Farm sold Horton multiple handguns as part of the same transaction," and because "Fleet Farm made multiple sales to Horton at the same location within five business days on several occasions."  *Id.* ¶¶ 57-58.[4]

_____

[4] Plaintiffs also cite an affidavit from an ATF special agent stating Horton "'us[ed] the camera feature on his [phone] to either take photographs or video' in connection with [his] October 17, 2021, purchase of a [firearm] at Fleet Farm's Oakdale store."  *Id.* ¶ 59.  This

These allegations form the basis for Plaintiffs' negligence, negligence per se, and negligent-entrustment claims against Fleet Farm.   Compl. ¶¶ 85-107.   The complaint contains no allegations regarding Fleet Farm's firearm policies—which, if this case proceeds, Fleet Farm will demonstrate exceed federal requirements, ATF regulations and guidelines, and industry practice.   It does not allege Fleet Farm failed to submit a Form 4473 for Horton's transactions.   It does not allege NICS "delayed," "cancelled," or "denied" any of Horton's purchases, nor does it allege Fleet Farm ever sold a firearm to Horton without receiving NICS' "proceed" authorization.   And it does not address the following information available in public records[5]: (1) in his guilty plea, Horton "stipulate[d] and agree[d]" that "he knowingly and voluntarily made a false written statement to Fleet Farm" that "was intended and likely to deceive Fleet Farm about a fact material to the lawfulness of the sale of the firearm," Davis Decl., Ex. C at 2[6]; (2) in his guilty plea, Young-Duncan agreed that "at [his] direction … [Horton] knowingly made false and fictitious written statements to [FFLs]" that "were intended and likely to deceive the [FFLs]," *id.*, Ex. D at 2; and (3) ATF told Fleet Farm "in no way did [it] do anything wrong by selling [Horton] the firearms" because "[t]here was nothing in [Horton's] background that would have rendered a denied response" from NICS.   *Id.*, Ex. E.

---

purchase is irrelevant, as the shooting "giv[ing] rise to this action" occurred seven days **before** this transaction.  *Id.* ¶ 62.  Plaintiffs do not allege Horton used the camera feature during the July 31 transaction or any other transactions predating the shooting.

[5] Fleet Farm provides this information for background purposes only.  Regardless, courts may "take judicial notice of public records, including court records," at the Rule 12 stage. *Madgett Law, LLC v. Pravati Capital, LLC*, 706 F. Supp. 3d 831, 835-36 (D. Minn. 2023).

[6] Horton's plea agreement is referenced in the complaint.  Compl. ¶ 64.

## LEGAL STANDARD

On a motion to dismiss, the Court accepts well-pleaded allegations as true and draws all reasonable inferences in Plaintiffs' favor, but does not accept "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, or legal conclusions couched as factual allegations." *McDonough v. Anoka Cnty.*, 799 F.3d 931, 945 (8th Cir. 2015). To state a claim, Plaintiffs' allegations must be plausible, meaning they must create a "reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (cleaned up).

## ARGUMENT

### I. The PLCAA preempts Plaintiffs' negligence and negligent-entrustment claims, and their aiding-and-abetting theory.

Two of Plaintiffs' claims and their aiding-and-abetting theory[7] are preempted by the PLCAA, so must be dismissed. The PLCAA was enacted to "prohibit causes of action against … [firearm] dealers" … for the harm solely caused by the criminal or unlawful misuse of firearm products … by others." 15 U.S.C. § 7901(b)(1). Consistent with this purpose, the PLCAA states "[a] qualified civil liability action may not be brought in any Federal or State court." *Id.* § 7902. "Qualified civil liability action" means any civil action "brought by any person against a … seller of a qualified product[8] … for damages …

---

[7] Under Minnesota law, "[a]iding and abetting is not an independent tort, but a theory of liability under which a party may be held jointly and severally liable for the underlying tort." *Zayed v. Associated Bank, N.A.* ("*Zayed II*"), 913 F.3d 709, 714 (8th Cir. 2019).

[8] "Qualified product" is defined as "a firearm," including "any weapon" that can "expel a projectile by the action of an explosive." 15 U.S.C. § 7903(4); 18 U.S.C. § 921(a)(3)(A).

resulting from the criminal or unlawful misuse of a qualified product by the person or a third party." *Id.* § 7903(5)(A).

The PLCAA contains six narrow exceptions to its prohibition on civil actions, two of which are relevant here. ***First***, the PLCAA does not preempt "an action brought against a seller for negligent entrustment or negligence per se." *Id.* § 7903(5)(A)(ii). That the PLCAA "does not preempt claims against [FFLs] for negligent entrustment or negligence per se … demonstrates that Congress consciously considered how to treat tort claims" and "chose generally to preempt all common-law claims," while "carv[ing] out an exception for certain specified common-law claims." *Ileto v. Glock, Inc.*, 565 F.3d 1126, 1135 n.6 (9th Cir. 2009); *see also Estate of Kim ex rel. Alexander v. Coxe*, 295 P.3d 380, 386 (Alaska 2013); *Delana v. CED Sales, Inc.*, 486 S.W.3d 316, 321 (Mo. 2016). ***Second***, the PLCAA does not preempt:

> (iii) an action in which a … seller of a [firearm] knowingly violated a State or Federal statute applicable to the sale … of the [firearm], and the violation was a proximate cause of the harm for which relief is sought, including--
>
> (I) any case in which the … seller knowingly made any false entry in, or failed to make appropriate entry in, any record required to be kept under Federal or State law with respect to the qualified product, or aided, abetted, or conspired with any person in making any false or fictitious oral or written statement with respect to any fact material to the lawfulness of the sale or other disposition of a qualified product; or
>
> (II) any case in which the … seller aided, abetted, or conspired with any other person to sell or otherwise dispose of a [firearm], knowing, or having reasonable cause to believe, that the actual buyer … was prohibited from possessing or receiving a firearm or ammunition under [18 U.S.C. § 922(g) or (n)].

- 8 -

*Id.* § 7903(5)(A)(iii). This is known as the "predicate exception," which permits FFLs to be sued "only for statutory violations concerning firearm regulations or sales and marketing regulations." *Ileto*, 565 F.3d at 1137.

Whether the PLCAA preempts a claim is determined on a claim-by-claim basis. *E.g.*, *Doyle v. Combined Sys., Inc.*, 2023 WL 5945857, at *6 (N.D. Tex. Sept. 11, 2023) ("When a plaintiff asserts multiple legal theories based on facts that implicate the PLCAA, each legal theory is best understood as a separate 'action' within the PLCAA's scheme."). This is because "[r]eading the PLCAA as a prohibition on suits rather than claims would permit claims Congress sought to foreclose or foreclose claims Congress sought to permit," and "[a] litigant's 'decision to join all of his or her claims in a single lawsuit should not rescue claims that would have been doomed ... if they had been asserted in a separate action,' nor should it doom claims that would have survived in a separate action." *Id.* (quoting *Rockwell Int'l Corp. v. United States*, 549 U.S. 457, 476 (2007)); *see also* *Hendrick v. Academy I, LP*, 2024 WL 4594958, at *3-6 (Mo. Ct. App. Oct. 29, 2024) (claim-by-claim analysis of PLCAA preemption); *Parsons v. Colt's Mfg. Co.*, 2020 WL 1821306 (D. Nev. Apr. 10, 2020) (same).

Here, the PLCAA preempts Plaintiffs' negligence and negligent-entrustment claims and their aiding-and-abetting theory.

### A. The PLCAA preempts Plaintiffs' negligence claim.

Plaintiffs' negligence claim asserts Fleet Farm owed a common-law duty to "not expose others to reasonably foreseeable risks of injury" and "exercise reasonable care in distributing and selling firearms." Compl. ¶ 86. This claim is preempted. *E.g.*, *Ileto*, 565

F.3d at 1135 (concluding the PLCAA "clearly intended to preempt common-law claims," including "classic negligence" claims); *Jefferies v. Dist. of Columbia*, 916 F. Supp. 2d 42, 46-47 (D.D.C. 2013) (negligence claim was "unequivocally," "explicitly and clearly prohibit[ed]" by the PLCAA); *Coxe*, 295 P.3d at 386-88 (concluding the PLCAA establishes "a prohibition on general negligence actions"); *Delana*, 486 S.W.3d at 321 (concluding the PLCAA "preempts common law state tort actions, like Appellant's negligence claim").

The complaint also alleges Fleet Farm is liable for common-law negligence based on purported violations of certain federal and Minnesota laws.  Compl. ¶¶ 89-90.  Although Plaintiffs attempt to invoke these alleged statutory violations as evidence of negligence, this component of Plaintiffs' negligence claim is duplicative of their negligence per se claim.  Regardless, there are no facts suggesting these laws are implicated by Fleet Farm's alleged conduct, let alone that Fleet Farm "knowingly" violated such laws.  *Infra* Section II.C.[9]  With no statutory predicate, Plaintiff is left with a pure common-law negligence claim that is preempted by the PLCAA.  And to the extent the Court concludes Plaintiffs have plausibly alleged Fleet Farm violated any of the statutes cited in their negligence claim, it should conclude the PLCAA bars Plaintiffs' negligence claim to the extent it is

---

[9] To the extent Plaintiffs allege violations of federal regulations as bases for their negligence claim, such regulations do not satisfy the predicate exception, which encompasses only knowing violations of a "statute" applicable to firearm sales.  15 U.S.C. § 7903(5)(A)(iii); *see also Dep't of Homeland Sec. v. MacLean*, 574 U.S. 383, 391 (2015) ("Congress's choice to say 'specifically prohibited by law' rather than 'specifically prohibited by law, rule, or regulation' suggests that Congress meant to exclude rules and regulations.").

premised on alleged common-law duties.  *E.g.*, *Doyle*, 2023 WL 5945857, at *6 (explaining the PLCAA should not be construed to "permit claims Congress sought to foreclose").

**B.    The PLCAA preempts Plaintiffs' negligent-entrustment claim.**

Although the PLCAA permits actions "brought against a seller for negligent entrustment," it defines "negligent entrustment" as:

> the supplying of a qualified product by a seller for use by another person when the seller knows, or reasonably should know, ***the person to whom the product is supplied is likely to, and does, use*** the product in a manner involving unreasonable risk of physical injury to the person or others.

15 U.S.C. § 7903(5)(B) (emphasis added).

The term "use" in the PLCAA's definition of "negligent entrustment" does not include reselling.  When enacting the PLCAA, Congress understood the negligent-entrustment exception would ***not*** apply where an FFL is alleged to have "s[old] to gun traffickers knowing (or with reason know) that the trafficker intends to resell the guns to criminals" or if "the persons to whom [the FFL] sold the guns did not commit the underlying criminal acts."  *Soto v. Bushmaster Firearms Int'l, LLC*, 2016 WL 8115354, at *14 (Conn. Super. Ct. Oct. 14, 2016) (quoting H.R. Rep. No. 107-727, pt. 2, at 51 (2002); H.R. Rep. No. 109-124, at 144).  Instead, the exception applies only where a negligent-entrustment claim arises from "initial transfers completed between the original seller and purchaser of a gun," not "secondary transfers even when the original seller is [alleged to be] aware of the purchaser's intent to resell to a particular individual."  *Id.* (quoting H.R. Rep. No. 107-727, pt. 2, at 51); *see also* H.R. Rep. No. 109-124, at 140 (explaining the PLCAA immunizes from liability "dealer[s]" who "sold … guns to a person who …

- 11 -

resell[s] them to criminals"); *id.* at 143 (explaining negligent-entrustment exception "cover[s] only cases where the dealer [allegedly] knows or should know that the person who is buying the gun is likely to misuse it and the buyer *does*, in fact, misuse it," and the PLCAA preempts claims based on FFLs allegedly "negligently selling guns to traffickers who, in turn, supply criminals").    Simply put: "Congress contemplated negligent entrustment to include ***only direct entrustments to a shooter***." *Soto*, 2016 WL 8115354, at *15 (emphasis added).  Because Plaintiffs allege Fleet Farm sold firearms to Horton and at least two further transfers occurred before the shooting, their negligent-entrustment theory does not meet the PLCAA's statutory definition of "negligent entrustment" and is preempted.  *See Minnesota v. Fleet Farm LLC*, 679 F. Supp. 3d 825, 842 (D. Minn. 2023) ("[T]he present case does not meet the definition of negligent entrustment under the PLCAA because the straw purchasers did not use the firearms themselves, but rather transferred them to others who then caused the injuries.").

### C.    The PLCAA preempts Plaintiffs' aiding-and-abetting theory.

The PLCAA permits an aiding-and-abetting theory only where an FFL "knowingly … aided, abetted, or conspired with any person in making any false or fictitious oral or written statement with respect to any fact material to the lawfulness of the sale … of a [firearm]," or "aided, abetted, or conspired with any other person to sell … a [firearm], knowing, or having reasonable cause to believe, that the actual buyer of the [firearm] was prohibited from possessing or receiving a firearm" under 18 U.S.C. § 922(g) or (n).[10]  15

_____

[10] Section 922(g) prohibits nine categories of persons from possessing firearms, including convicted felons.  Section 922(n) prohibits persons under felony indictment from shipping

U.S.C. § 7903(5)(A)(iii)(I)-(II).  Neither provision applies.  Plaintiffs do not allege Fleet

Farm had ***knowledge*** of false statements made by Horton in connection with his firearm

purchases.  *Infra* Section V.  And Plaintiffs do not allege Horton was prohibited from

purchasing firearms under 18 U.S.C. § 922(g) or (n).

**II.    The negligence claim fails because Plaintiffs do not allege Fleet Farm owed
        them any recognized common-law duty or violated the laws cited to support
        the claim.**

Plaintiffs do not allege any recognized common-law duty owed by Fleet Farm or

facts suggesting Fleet Farm violated the laws cited in support of the negligence claim.

**A.    Plaintiffs do not allege a recognized common-law duty of care.**

Whether a duty exists is a legal question.  *Smits as Tr. for Short v. Park Nicollet

Health Servs.*, 979 N.W.2d 436, 445 (Minn. 2022).  A duty's existence may be determined

on a motion to dismiss.  *E.g.*, *Bell v. Pfizer, Inc.*, 716 F.3d 1087 (8th Cir. 2013) (affirming

dismissal of negligence claim where plaintiff "failed to establish … defendants owed her a

duty of care" (cleaned up)).  To determine whether a duty exists, courts consider: "(1) the

foreseeability of harm to the plaintiff, (2) the connection between the defendant's conduct

and the injury suffered, (3) the moral blame attached to the defendant's conduct, (4) the

policy of preventing future harm, and (5) the burden to the defendant and community of

imposing a duty to exercise care with resulting liability for breach."  *In re Netgain Tech.,

LLC*, 2022 WL 1810606, at *11 (D. Minn. June 2, 2022) (citation omitted).  "[A] person

does not owe a duty of care to another if harm is caused by a third party's conduct" unless

---

or transporting firearms in interstate or foreign commerce.

there is a "special relationship" between plaintiffs and defendant or "defendant's own conduct creates a foreseeable risk of injury to a foreseeable plaintiff." *Fenrich v. The Blake Sch.*, 920 N.W.2d 195, 201-02 (Minn. 2018) (cleaned up).

Plaintiffs allege Fleet Farm owed common-law duties "to exercise reasonable care in distributing and selling firearms" and "to refrain from engaging in activity creating reasonably foreseeable risks of injury to others."  Compl. ¶ 86.  The problem is no Minnesota cases impose such duties on firearm sellers in connection with lawful transfers to competent adults, let alone a duty to prevent third-party non-customers from obtaining such firearms ***after*** the transfer and using them to commit crimes.  *E.g.*, *Ashley Cnty. v. Pfizer, Inc.*, 552 F.3d 659, 673 (8th Cir. 2009) ("[I]t is not the role of a federal court to expand state law in ways not foreshadowed by state precedent." (cleaned up)).  Other courts have rejected arguments for imposing such duties, with good reason: "[o]ne cannot be expected to owe a duty to the world at large to protect it against the actions of third parties." *Valentine v. On Target, Inc.*, 727 A.2d 947, 950-51, 953 (Md. Ct. App. 1999); *cf. Corrie v. Caterpillar, Inc.*, 403 F. Supp. 2d 1019, 1030-31 (W.D. Wash. 2005) (no common-law duty existed where negligence claim was premised on the "lawful sale of a non-defective product that a customer intentionally used to injure a third party").[11]

---

[11] Fleet Farm does not contend it never owes a common-law duty relating to firearm sales, but such duty is limited to the negligent-entrustment context.  *E.g.*, *Knight v. Wal-Mart Stores, Inc.*, 889 F. Supp. 1532, 1537-39 (S.D. Ga. 1995) (declining to recognize duty "where a reasonable salesperson would have no idea that the purchaser has previously been institutionalized or adjudicated mentally incompetent," but recognizing duty to not sell to "mentally defective person[s]"); *Bernethy v. Walt Failor's, Inc.*, 653 P.2d 280, 283 (Wash. 1982) (limiting "general duty" to "not furnish[ing] a dangerous instrumentality … to an incompetent," including persons "incompetent due to intoxication").  As discussed below,

Plaintiffs also cannot allege Fleet Farm's own conduct "create[d] a foreseeable risk of injury to a foreseeable plaintiff." *Fenrich*, 920 N.W.2d at 202. Here, the question turns on "whether the specific danger was objectively reasonable to expect, not simply whether it was within the realm of any conceivable possibility." *Id.* at 205 (cleaned up). Minnesota recognizes "there is generally no duty to protect strangers from the criminal actions of a third party." *State v. Back*, 775 N.W.2d 866, 870 (Minn. 2009). Here, the complaint alleges Plaintiffs' injuries resulted from ***at least three*** independent criminal acts that occurred ***after*** Horton's purchase from Fleet Farm: Horton's unlawful transfer of the handgun to Young-Duncan; Young-Duncan's unlawful transfer of the handgun to Phillips (or some other third-party); and Phillips firing the weapon during the shooting. Each of these actions is a superseding event, such that Fleet Farm had no common-law duty to prevent the harms that resulted from these third parties' intentional criminal acts. *See Valentine*, 727 A.2d at 950-51 (rejecting argument that it is "generally foreseeable that guns are … used in the commission of crimes"); *cf. Labzda v. Purdue Pharma, L.P.*, 292 F. Supp. 2d 1346, 1353-55 (S.D. Fla. 2003) (drug manufacturer did not owe duty to police use of lawful medication).

### B.    Plaintiffs have not alleged plausibly that Fleet Farm violated any of the statutes cited in support of their negligence claim.

Plaintiffs' negligence claim also fails because there are no allegations supporting Plaintiffs assertion that Fleet Farm violated the laws cited as a basis for their negligence (and negligence per se) claim. These can be grouped into three categories: laws with no

---

*infra* Section V, Plaintiffs have not plausibly alleged a viable negligent-entrustment claim.

application to FFLs, criminal penalty provisions that cannot give rise to civil liability, and

laws Plaintiffs do not assert Fleet Farm violated.

> ***First***, Plaintiffs cite five laws inapplicable to FFLs:

- **18 U.S.C. § 922(a)(1)**: "It shall be unlawful … for any person … except a … licensed dealer[] to engage in the business of … dealing in firearms …."

- **18 U.S.C. § 922(a)(6)**: "It shall be unlawful … for any person in connection with the acquisition or attempted acquisition of any firearm … from a … licensed dealer … knowingly to make any false or fictitious oral or written statement or to furnish or exhibit any false, fictitious, or misrepresented identification, intended or likely to deceive such … dealer …."

- **18 U.S.C. § 924(a)(1)(A)**: "[W]hoever … knowingly makes any false statement or representation with respect to the information required by this chapter to be kept in the records of a person licensed under this chapter … shall be fined under this title, imprisoned not more than five years, or both."

- **Minn. Stat. § 624.7132, subd. 15(a)(4)**: "[A] person who does any of the following is guilty of a gross misdemeanor … (4) makes a false statement in order to become a transferee of a pistol … knowing or having reason to know the statement is false."

- **Minn. Stat. § 624.7133**: "Any person who purchases … a firearm on behalf of or for transfer to a person known to be ineligible to possess or purchase a firearm pursuant to federal or state law is guilty of a gross misdemeanor."

Compl. ¶¶ 89-90, 94, 97.[12]  Plaintiffs allege correctly that Fleet Farm stores are "licensed

firearm dealers," Compl. ¶ 38, rendering section 922(a)(1) inapplicable.  And by their plain

---

[12] 18 U.S.C. § 924(a)(1)(A) and Minn. Stat. § 624.7132, subd. 15(a)(4) are also criminal penalty provisions that cannot provide the basis for a negligence claim.

terms, 18 U.S.C. §§ 922(a)(6) and 924(a)(1)(A), and Minn. Stat. §§ 624.7132, subd.

15(a)(4) and 624.7133 address customer conduct, not FFL conduct.

    ***Second***, Plaintiffs cite five criminal penalty provisions (including 18 U.S.C.

§ 924(a)(1)(A) and Minn. Stat. § 642.7132, subd. 15(a)(4), described above):

- **18 U.S.C. § 924(a)(1)(D)**: "[W]hoever … willfully violates any other provision of this chapter … shall be fined under this title, imprisoned not more than five years, or both."[13]

- **18 U.S.C. § 924(a)(3)**: "Any licensed dealer … who knowingly—(A) makes any false statement or representation with respect to the information required by the provisions of this chapter to be kept in the[ir] records …, or (B) violates subsection (m) of section 922, shall be filed under this title, imprisoned not more than one year, or both."[14]

- **Minn. Stat. § 624.7132, subd. 15(a)(2)**: "[A] person who does any of the following is guilty of a gross misdemeanor … (2) transfers a pistol … to a person who has made a false statement in order to become a transferee, if the transferor knows or has reason to know the transferee has made the false statement."[15]

Compl. ¶¶ 89-90, 94, 97. Under Minnesota law, "[c]ivil liability arises from a violation of

a criminal statute only if 'the statute expressly or by clear implication so provides.'" *Sellers*

*v. City of St. Paul*, 1995 WL 238765, at *1 (Minn. Ct. App. Apr. 25, 1995) (quoting *Larson*

*v. Dunn*, 460 N.W.2d 39, 47 n.4 (Minn. 1990)); *accord Liedtke v. Runningen*, 2016 WL

11491381, at *10 (D. Minn. June 20, 2016). Nothing in the referenced criminal penalty

provisions of the GCA or Minnesota law indicate "expressly or by clear implication" an

---

[13] There are no allegations that Fleet Farm has ***willfully*** violated any GCA provision.

[14] There are no allegations that Fleet Farm made a "false statement or representation" in any GCA-mandated records, or violated section 922(m).

[15] The complaint does not allege any facts supporting a plausible conclusion that, at the time the transfers occurred, Fleet Farm knew or had "reason to know" Horton "made a false statement in order to become a transferee."

intent to impose civil liability.  Further, by definition penalty provisions cannot be violated and do not establish standards of care, so cannot provide the basis for a negligence claim.

　　　*Third*, Plaintiffs cite five laws with theoretical application to FFLs:

- **18 U.S.C. § 922(m)**: "It shall be unlawful for any … licensed dealer … to knowingly make a false entry in, to fail to make appropriate entry in, or to fail to properly maintain, any record which [they are] required to keep pursuant to section 923 of this chapter or regulations promulgated thereunder."

- **18 U.S.C. § 923(a)**: "No person shall engage in the business of … dealing in firearms … until he has filed an application with and received a license to do so from the Attorney General."

- **27 C.F.R. § 478.21(a)**: "The Director is authorized to prescribe all forms required by this part.  All of the information called for in each form shall be furnished as indicated by the headings on the form and the instructions on or pertaining to the form.  In addition, information called for in each form shall be furnished as required by this part."

- **27 C.F.R. § 478.124(c)(1)**: "Prior to making an over-the-counter transfer of a firearm to a non-licensee … [the] licensed dealer … shall obtain a Form 4473 from the transferee …."

- **27 C.F.R. § 478.124(c)(5)**: "The licensee shall sign and date the form if the licensee does not know or have reasonable cause to believe that the transferee is disqualified by law from receiving the firearm and transfer the firearm described on the Form 4473."

Compl. ¶¶ 89, 94, 97.  The complaint contains no allegations that Fleet Farm violated these provisions.  It does not (and cannot) allege Fleet Farm made a false entry on or failed to maintain any records, much less that it did so ***knowingly***.  *See* 18 U.S.C. § 922(m).  It does not (and cannot) allege Fleet Farm failed to obtain licensing to sell firearms.  *See id.* § 923(a).  It does not (and cannot) allege Fleet Farm failed to "furnish[]" information required by ATF Forms 4473 or 3310.4.  *See* 27 C.F.R. § 478.21(a).  It does not (and cannot) allege Fleet Farm failed to obtain a completed Form 4473 from Horton before

transferring any firearms. *See id.* § 478.124(c)(1). And it does not (and cannot) allege Fleet Farm failed to "sign and date" any Form 4473s as required by the CFR. *See id.*, subd. (c)(5). In short, Plaintiffs' declaration that Fleet Farm violated these laws is unsupported by their allegations.

**III.   The negligence per se claim fails because the underlying statutes do not protect particular classes of individuals or create private causes of action, and Plaintiffs have not alleged plausibly that Fleet Farm violated any cited statutes.**

Plaintiffs' negligence per se claim fails because it is premised on laws that do not protect particular classes of persons and do not create a private cause of action. And as discussed, Plaintiffs do not and cannot allege Fleet Farm violated the cited laws.

**A.   Negligence per se may not be premised on statutes protecting the public at large.**

"Not all statutes … create a tort duty of care," and Minnesota follows the Restatement to determine if a statute may provide the basis for a negligence per se claim. *Alexander v. 1328 Uptown, Inc.*, 2020 WL 1644246, at *8-9 (D. Minn. Apr. 2, 2020). Negligence per se may only be premised on a statute whose purpose is "exclusively or in part: (a) to protect a class of persons which includes the one whose interest is invaded, and (b) to protect the particular interest which is invaded, and (c) to protect that interest against the kind of harm which has resulted, and (d) to protect that interest against the particular hazard from which the harm results." Restatement (Second) of Torts § 286. This means if a statute is "designed to protect the public at large rather than a particular class of individuals," it cannot provide the basis for negligence per se. *Kronzer v. First Nat'l Bank of Minneapolis*, 235 N.W.2d 187, 193 (Minn. 1975); *see also Alexander*, 2020 WL

1644246, at *9 (same); *Haynes v. Abdelwahed*, 1997 WL 406644, at *1 (Minn. Ct. App. July 22, 1997) (same); *Opay v. Howard Lake Liquor Store*, 1995 WL 34838, at *5 (Minn. Ct. App. Jan. 31, 1995) (public-nuisance statute could not provide basis for negligence per se because statute was "designed to protect the general public"), *rev'd on other grounds*, 531 N.W.2d 845 (Minn. 1995); *accord* Restatement (Second) of Torts § 288, cmt. b.

Here, the laws Plaintiffs invoke protect the public at large, not particular classes of persons. *E.g.*, *RSM, Inc. v. Herbert*, 466 F.3d 316, 324 (4th Cir. 2006) (explaining the GCA protects "public safety" and safeguards against "lawlessness and violent crime" (citation omitted)); *Shawano Gun & Loan v. Hughes*, 2010 WL 3062947, at *6 (E.D. Wis. Aug. 2, 2010) ("An overarching purpose of the GCA is to protect the public …."); Minn. Stat. § 609.01 (explaining a purpose of Minnesota's criminal laws is protecting "public safety and welfare"). They cannot supply the basis for a negligence per se claim.

### B. Negligence per se may not be premised on statutes that do not create a private cause of action.

Under Minnesota law, a statute cannot provide the basis for negligence per se if it does not create a private cause of action. *E.g.*, *Netgain Tec.*, 2022 WL 1810606, at *16 (dismissing negligence per se claim "because the FTC Act creates no private right of action" (citation omitted)); *Samuel v. Ormoia Media Network*, 569 F. Supp. 3d 904, 911-12 (D. Minn. 2021) (claim failed because plaintiff did not "demonstrate the Congress intended to make a private remedy available" for alleged statutory violations); *Elder v. Allstate Ins. Co.*, 341 F. Supp. 2d 1095, 1100-02 (D. Minn. 2004) (rejecting claim premised on alleged violations of Unfair Claims Practices Act, explaining because "[t]here is no

private right of action for a violation of the UCPA," the statute "is not amenable to a negligence per se claim"); *see also Nelson v. Am. Fam. Mut. Ins. Co.*, 2013 WL 5745384, at *19 (D. Minn. Oct. 23, 2013); *Vind v. McGuire*, 2013 WL 6152312, at *4 (Minn. Ct. App. Nov. 25, 2013); *Meyer v. Lindala*, 675 N.W.2d 635, 641 (Minn. Ct. App. 2004). This makes good sense, because allowing negligence per se claims to be premised on statutes lacking private causes of action would render the doctrine "a magic transforming formula that automatically creates a private right of action for the civil enforcement, in tort law, of every statute." *In re Medtronic, Inc. Sprint Fidelis Leads Prods. Liab. Litig.*, 592 F. Supp. 2d 1147, 1163 (D. Minn. 2009) (cleaned up).

Here, Plaintiffs' negligence per se claim is premised on statutes that do not create private causes of action. The GCA does not contemplate private causes of action—it is a criminal statute providing criminal penalties, *see* 18 U.S.C. §§ 922-24, and does not authorize private actions against firearm retailers—so cannot provide the basis for Plaintiffs' negligence per se claim. *E.g.*, *Corporan v. Wal-Mart Stores E. LP*, 2016 WL 3881341, at *5 (D. Kan. July 18, 2016) (holding GCA does not provide basis for negligence per se claim). The cited federal regulations also do not contemplate private causes of action. *See* 27 C.F.R. §§ 478.21(a), 478.124(c). And the cited Minnesota statutes establish criminal penalties, not private civil remedies. Because none of the statutes Plaintiffs invoke create private causes of action, the negligence per se claim must be dismissed.

**C.    Plaintiffs have not alleged plausibly that Fleet Farm violated any of the statutes cited in support of their negligence per se claim.**

As the basis for their negligence per se claim, Plaintiffs offer nine of the thirteen laws cited in their negligence claim.  Compl. ¶¶ 89-90, 97.[16]  As explained, these laws cannot give rise to a claim because they are inapplicable to FFLs, are criminal penalty provisions that do not provide a basis for civil liability, or are not alleged to have been violated by Fleet Farm.  *Supra* Section II.B.

**IV.    Plaintiffs' aiding-and-abetting theory fails as a matter of law.**

Plaintiffs also advance an aiding-and-abetting theory as basis for their negligence and negligence per se claims.  Compl. ¶¶ 65, 90, 97.  This fails for two reasons.

***First***, aiding-and-abetting requires alleging the defendant "know[s] that the primary tortfeasor's conduct constitutes a breach of duty."  *Witzman v. Lehrman, Lehrman & Flom*, 601 N.W.2d 179, 187 (Minn. 1999).  This requires pleading "scienter—the defendants must *know* that the conduct they are aiding and abetting is a tort," *id.* at 186, and plaintiffs must allege "more than awareness of the conduct in question, that it raised 'red flags,' or even that it amounted to gross negligence," *Zayed v. Associated Bank, N.A.* ("*Zayed II*"), 913 F.3d 709, 715 (8th Cir. 2019).  Because aiding-and-abetting requires pleading scienter, it must be pleaded with particularity.  *Zayed v. Associated Bank, N.A.* ("*Zayed I*"), 779 F.3d 727, 733 (8th Cir. 2015).

---

[16] Plaintiffs do not cite 18 U.S.C. §§ 922(m), 923(a), 924(a)(3) or Minn. Stat. § 624.7132, subd. 15(a)(2) as bases for their negligence per se claim.  *Compare* Compl. ¶¶ 89-90, *with id.* ¶ 97.

Plaintiffs have not alleged with particularity that Fleet Farm had ***actual knowledge*** Horton was engaging in conduct proscribed by the GCA.  Although Plaintiffs assert Fleet Farm ***should have known*** Horton was engaged in straw purchasing, Compl. ¶¶ 60, their complaint contains no non-conclusory allegations that Fleet Farm ***actually knew*** Horton was engaging in straw purchasing at the time of sale.  *E.g.*, *Zayed II*, 913 F.3d at 715-19 (alleging awareness of "red flags," but not actual knowledge of wrongful conduct, is insufficient).

***Second***, an aiding-and-abetting theory requires alleging the defendant "substantially assist[ed] or encourage[d] the primary tortfeasor in the achievement of the breach" and provided "something more than … routine professional services."  *Zayed I*, 779 F.3d at 733-35 (cleaned up).  "[F]ail[ing] to object" to wrongful conduct "is not enough," *id.* at 735, nor is "inadvertently advanc[ing]" wrongful conduct, *Zayed II*, 913 F.3d at 720.  Even taking the complaint's allegations as true, there is no suggestion Fleet Farm did anything beyond provide routine professional services that may have "inadvertently advanc[ed]" Horton's (and others') wrongful conduct.  *Id.*  Such allegations are insufficient.

## V.    Plaintiffs' negligent-entrustment claim is not recognized by Minnesota law.

Minnesota's negligent-entrustment doctrine follows the Restatement, and requires Plaintiffs to allege plausibly that: (1) Fleet Farm "supplies directly or through a third party"; (2) "a chattel for the use of another whom [Fleet Farm] knows or has reason to know to be likely because of his youth, inexperience, or otherwise, to use it in a manner involving unreasonable risk of physical harm to himself and others whom the supplier should expect to share in or be endangered by its use"; and (3) physical harm resulted.

- 23 -

Restatement (Second) of Torts § 390; *see also Soto v. Shealey*, 331 F. Supp. 3d 879, 887 (D. Minn. 2018).

To start, Minnesota has never recognized "negligent entrustment in the context of a sale." *Johnson v. Johnson*, 611 N.W.2d 823, 826-27 (Minn. Ct. App. 2000); *accord Bertelsen v. Walker*, 2020 WL 11039168, at *4 (Minn. Dist. Ct. Nov. 10, 2020). And Minnesota also requires the defendant to retain the legal right to "control" the entrusted property. *Johnson*, 611 N.W.2d at 826-27; *accord* 57A Am. Jur. 2d Negligence § 302; 65 C.J.S. Negligence § 156. Here, Fleet Farm made commercial sales to Horton, and after those sales were made, Fleet Farm lacked any right to "control" the transferred firearms. Accordingly, Plaintiffs' negligent-entrustment claim fails as a matter of law.

Setting this aside, Plaintiffs have not alleged plausibly that Fleet Farm knew or had reason to know Horton was likely to use firearms in a manner involving unreasonable risk to others "because of his youth, inexperience, or otherwise." Restatement (Second) of Torts § 390. Minnesota law limits negligent entrustment to circumstances where property is entrusted to "incompetent or inexperienced person[s]." *Axelson v. Williamson*, 324 N.W.2d 241, 243 (Minn. 1982); *see also* Restatement (Second) of Torts § 390, cmt. c (explaining doctrine only applies where property recipient "is one of a class which is legally recognized as so incompetent as to prevent them from being responsible for their actions" or if the seller knows the recipient has a "condition … mak[ing] him incapable of exercising the care which it is reasonable to expect of a normal sober adult"). No Minnesota authority recognizes a negligent-entrustment claim where, as here, property is transferred to a competent adult, that adult transfers the property to a third-party, the third-

party transfers the property to yet another third-party, and *that* third-party uses it "in a manner involving unreasonable risk of physical harm." Other courts facing similar claims have declined to expand the doctrine in this way. *E.g.*, *Soto v. Bushmaster Firearms Int'l, LLC*, 202 A.3d 262, 282 (Conn. 2019) (declining to extend doctrine to cover firearm sellers on basis that "some small subset of buyers will share [assault] weapons with their young adult sons and some much smaller subset of young adult males will use those weapons to commit terrible, random crimes"). This court should do the same.

Plaintiffs also do not allege plausibly that Fleet Farm knew or had reason to know Horton was "likely … to use [firearms] in a manner involving unreasonable risk of physical harm to … others whom [Fleet Farm] should [have] expect[ed] to share in or be endangered." Restatement (Second) of Torts § 390. Under Minnesota law, sellers do not have a common-law duty to investigate a customer before making a sale. *Johnson*, 611 N.W.2d at 825-26; *see also Islam v. Creative Tours Micronesia, Inc.*, 36 F.3d 1102, 1994 WL 477543, at *1 (9th Cir. 1994) (explaining courts have "unanimously concluded" Restatement section 390 "do[es] not create an affirmative duty of inquiry"). Fleet Farm had no duty to investigate Horton's background beyond its obligations under the GCA, the complaint does not (and cannot) allege Fleet Farm sold any firearms to Horton without government authorization, and the complaint does not (and cannot) allege the quantity or frequency of firearms purchased by Horton exceed federal or state limits. *E.g.*, *Phillips v. Lucky Gunner, LLC*, 84 F. Supp. 3d 1216, 1225-26 (D. Colo. 2015) (dismissing negligent-entrustment claim under section 390 premised on sale of ammunition because a seller has no independent "duty to investigate the background of the person to whom chattel is

entrusted," purchasing a large volume of ammunition did not make a purchase" inherently suspicious," and there were "no allegations that the quantities … purchased … exceed[ed] any state or federal law placing limits on the amount of ammunition … a person may possess at any one time").  And as explained, *infra* Section VI, as a matter of law the intervening criminal acts of third parties that caused Plaintiffs' injuries were not foreseeable to Fleet Farm.

**VI.    All of Plaintiffs' claims fail because they do not plead a viable proximate-causation theory.**

Finally, Plaintiffs' claims require proving Fleet Farm's alleged conduct was a proximate cause of their injuries.  *E.g.*, *Doe 169 v. Brandon*, 845 N.W.2d 174, 177 (Minn. 2014) (negligence); *Gradjelick v. Hance*, 646 N.W.2d 225, 232 (Minn. 2002) (negligence per se); *Axelson*, 324 N.W.2d at 244 (negligent entrustment).  Proximate cause is absent as a matter of law if "reasonable minds" would not find it present.  *Lubbers v. Anderson*, 539 N.W.2d 398, 402 (Minn. 1995).  And proximate cause exists only where "an injury follows in an unbroken sequence, without an intervening efficient cause, from the [defendant's] original negligent act."  *Green Plains Otter Tail, LLC v. Pro-Env't, Inc.*, 953 F.3d 541, 547 (8th Cir. 2020) (cleaned up).  Superseding events will "break[] the chain of causation and prevent[] the original negligent actor from being liable for the final injury," and to determine if an event is superseding, courts consider if it "occurred after the original negligence," was not "brought about by the original negligence," "actively worked to bring about a result which would not otherwise have followed from the original negligence," and was not "reasonably foreseeable by the original wrongdoer."  *Id.* (quotation omitted).  An

injury is not reasonably foreseeable if "the connection between defendant's conduct and the plaintiff's injury [i]s too attenuated." *Id.* (cleaned up).

"As a general rule, a criminal act of a third person is an intervening efficient cause sufficient to break the chain of causation." *Hilligoss v. Cross Cos.*, 228 N.W.2d 585, 586 (Minn. 1975). This is because "furnish[ing] a condition by which the injury by the subsequent independent act of a third person occurred" does not proximately cause that injury. *Hack v. Johnson*, 275 N.W. 381, 385 (Minn. 1937). Here, the complaint alleges Fleet Farm furnished a condition by which at least **three** subsequent, independent criminal acts occurred: Horton's illegal transfer of the handgun to Young-Duncan, Young-Duncan's illegal transfer of the handgun to Phillips (or some other third party), and Phillips' criminal use of the handgun in the October 2021 shooting. Compl. ¶¶ 61-62. Taken together, there are multiple breaks in any alleged causal chain between Fleet Farm and Plaintiffs' injuries.

The Illinois Supreme Court affirmed dismissal of a nuisance claim on this basis in *Young v. Bryco Arms*, 821 N.E.2d 1078 (Ill. 2004). There, plaintiffs similarly asserted claims against various actors in the firearm industry relating to homicides involving "illegal firearms," including the "dealer[s] … who sold the guns used to kill [plaintiffs'] sons." *Id.* at 1090-91. On interlocutory appeal, the Illinois Supreme Court reversed the trial court and ordered dismissal of the action for failure to state a claim because plaintiffs' proximate-causation theory failed as matter of law. It explained the firearm dealers "merely create[d] a condition that makes the eventual harm [from illegal use of a firearm] possible," and it was unreasonable "to expect [them] to foresee that the aggregate effect of the lawful … sale of firearms will be the creation of a[n] [alleged] public nuisance," particularly

considering that the person whose criminal conduct "directly caused the injury" was several causal steps removed from the defendants. *Id.* Likewise, in *People v. Sturm, Ruger & Co.*, 309 A.D.2d 91 (N.Y. Sup. Ct. 2003), the New York state court affirmed the dismissal of a public-nuisance claim brought against handgun manufacturers on the basis that those handguns "are being used in crimes," explaining that "defendants' lawful commercial activity, having been followed by harm to person and property caused directly and principally by the criminal activity of intervening third parties, may not be considered a proximate cause of such harm" as a matter of law. *Id.* at 93, 103-04.

Similarly, in *Ashley County*, the Eighth Circuit affirmed dismissal of claims against manufacturers and distributers of over-the-counter medications for their alleged role in causing a methamphetamine epidemic. *See* 552 F.3d at 662-64. The court concluded proximate cause was absent because "[t]he criminal actions of the methamphetamine cooks and those further down the illegal line of manufacturing and distributing methamphetamine [we]re sufficient to stand as the cause of injury to the Counties" and were "totally independent of the Defendants' actions of selling cold medicine … even if the manufacturers knew that cooks purchased their products to use in manufacturing methamphetamine." *Id.* at 670 (cleaned up).

The causation issues presented in *Young*, *Sturm*, and *Ashley County* are nearly identical to those presented here. Plaintiffs allege Fleet Farm's July 31 sale to Horton may have "create[d] a condition" that ultimately led to the shooting. *Young*, 821 N.E.2d at 1091; *accord Hack*, 275 N.W. at 385. But there are multiple causal steps between Horton obtaining the firearm from Fleet Farm and that firearm's ultimate criminal use: (1) NICS

- 28 -

authorizing Fleet Farm to proceed with the transaction, Compl. ¶ 42; (2) Horton's subsequent illegal transfer of the firearm to Young-Duncan, *id.* ¶ 62; (3) Young-Duncan's further illegal transfer of the firearm to Phillips or another third party, *id.*; and (4) Phillips' ultimate criminal use of the firearm in the shooting, *id.* ¶ 62. *See Ashley Cnty.*, 552 F.3d at 670; *Young*, 821 N.E.2d at 1090-91. Given this attenuated chain involving the "criminal activit[ies] of intervening third parties," *Sturm*, 309 A.D.2d at 103-04, Fleet Farm could not have reasonably foreseen its July 31 transfer to Horton would result in that firearm being used by a third-party in a shooting. *See* H.R. Rep. No. 109-124, at 7 (explaining "[t]he sale of a firearm merely furnishes the condition for a crime and, as a matter of law, there can be no finding of proximate cause in an action brought on behalf of a victim against the seller of the firearm used in the crime"). Because the complaint fails to allege proximate cause as a matter of law, all claims should be dismissed.

## CONCLUSION

For the foregoing reasons, Fleet Farm respectfully requests that this Court dismiss Plaintiffs' claims against it with prejudice.

Dated:  December 9, 2024

/s/ Andrew W. Davis

Todd A. Noteboom (#0240047)
Andrew W. Davis (#0386634)
Andrew P. Leiendecker (#0399107)
Zachary J. Wright (#0402945)
STINSON LLP
50 South Sixth Street, Suite 2600
Minneapolis, MN 55402
(612) 335-1500
todd.noteboom@stinson.com
andrew.davis@stinson.com
andrew.leiendecker@stinson.com
zachary.wright@stinson.com

**Attorneys for Defendants Fleet Farm
LLC, Fleet Farm Group LLC, and Fleet
Farm Wholesale Supply Co. LLC**