**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

---

Beth Wiley and Kevin Wiley,
co-trustees for the next-of-kin of
Marquisha Wiley, decedent,
Chassity Ashford, Sherron Ashford,
Wayne Germond, Nicholas Guerrero,
Danielle Hernandez, Charisma Kyles,
Jordan Larson, Keeshara Perry,
Paris Pollard, Latosha Skinner,
Estan Tyler, Andrea Weathersby,
Ernest Whitmore, and
Kevaughn Wiley,

Case: 0:24-cv-04135-LMP-JFD

Plaintiffs,

vs.

Fleet Farm LLC,
Fleet Farm Group, LLC,
Fleet Farm Wholesale Supply Co., LLC,
and Truck Yard – SP LLC,

Defendants.

---

**MEMORANDUM OF LAW IN OPPOSITION TO THE MOTION TO DISMISS OF DEFENDANTS FLEET FARM, LLC, FLEET FARM GROUP, LLC, AND FLEET FARM WHOLESALE SUPPLY CO., LLC**

---

## INTRODUCTION

Marquisha Whiley is dead, and Plaintiffs Beth Wiley, Kevin Wiley, Chassity Ashford, Sherron Ashford, Nicholas Guerrero, Danielle Hernandez, Charisma Kyles, Jordan Larson, Keeshara Perry, Paris Pollard, Latosha Skinner, Estan Tyler, Andrea Weathersby, Ernest Whitemore, and Kevaughn Wiley ("Plaintiffs")

are injured in part because Defendants Fleet Farm, LLC, Fleet Farm Group, LLC, and Fleet Farm Wholesale Supply Co., LLC ("Fleet Farm") violated the Gun Control Act of 1968 ("the GCA"), the Minnesota Gun Control Act ("the MGCA"), and various federal regulations by selling a Mossberg MC2C 9mm semiautomatic pistol ("the Pistol") to Jerome Horton ("Horton"), a straw purchaser, who with the help of Gabriel Young-Duncan, illegally trafficked the Pistol to Devondre Trevon Phillips ("Phillips"). Phillips, whose criminal background made him ineligible to have any firearm, discharged the Pistol in a gunfight with Terry Brown on October 10, 2021 ("the Gunfight"), forever devastating Plaintiffs' lives. Fleet Farm, which constitutes a federal firearms licensee ("FFL") subject to federal and state firearms laws, audaciously argues that it cannot be sued for violations of the very laws to which it is subject and violated, arguing that the Protection of Lawful Commerce in Arms Act ("the PLCAA") makes it untouchable, and that Plaintiffs' well-pleaded claims should be dismissed under Rule 12(b)(6) of the Federal Rules of Civil Procedure.

The Court must reject Fleet Farm's hubris, for the same reasons that the Honorable John R. Tunheim, Senior District Judge for the District of Minnesota, rejected it in related litigation prosecuted by the State of Minnesota ("the State") through its Attorney General. *See* ECF Doc. 36, Memorandum Opinion and Order, *State of Minnesota v. Fleet Farm LLC, et al*, Case: 0:22-cv-02694 (D.Minn. June 27, 2023). The PLCAA *does not* preempt Plaintiffs' claims any more than it preempted the State's claims. Moreover, like the State's claims, Plaintiffs' claims fully satisfy the requirements of Rule 8(a) of the Federal Rules of Civil Procedure

and are well pleaded. Therefore, Fleet Farm's motion should be denied in all respects.

## FACTS SUPPORTING PLAINTIFF'S OPPOSITION

The factual background for Plaintiffs' claims is fully set forth in its well-pleaded complaint, ECF Doc. 1-1, Complaint (generally). Plaintiffs incorporate all of the complaint's allegations by reference here as if fully restated. The factual information presented here comes directly from the complaint and is presented here by way of background.

### I. The Gunfight

On October 10, 2021, Phillips and Brown engaged in the Gunfight at Seventh Street Truck Park ("Truck Park"), owned by Defendant Truck Yard – SP LLC ("Truck Yard"). ECF Doc. 1-1, Complaint at 8 of 31 (¶ 35). Stray bullets from the Gunfight killed Marquisha Wiley and injured Plaintiffs. *Id*. at 8-9 of 31 (¶ 35). Phillips and Brown are serving substantial prison sentences for their unlawful behavior. *Id*. at 9 of 31 (¶¶ 36-37). They are by no means the only ones legally culpable for what happened that night.

### II. Fleet Farm's Responsibility

Fleet Farm sells firearms and ammunition to the public. *Id*. at 9 of 31 (¶ 38). Between June and October of 2021, Fleet Farm sold the Pistol and 23 other firearms to Jerome Horton ("Horton") under suspicious circumstances that should have suggested to Fleet Farm that Horton was unlawfully purchasing the firearms, including the Pistol. *Id*. at 15-18 of 31 (¶¶ 55-50). Plaintiffs' complaint sets forth

both the legal and the factual basis for Fleet Farm's responsibility in clear terms. *See* ECF Doc. 1-1, Complaint (generally).

### A. Fleet Farm's Legal Responsibility

The GCA and related federal regulations impose nationwide licensing requirements which the Bureau of Alcohol, Tobacco, Firearms, and Explosives ("the ATF") enforces, and which FFLs are legally bound to follow. ECF Doc. 1-1, Complaint at 9 of 31 (¶ 39). These laws and regulations are designed to prevent crime by keeping guns away from people who are not legally entitled to possess them. *Id*. at 10 of 31 (¶¶ 40-41). Similarly, the MGCA establishes categories of persons prohibited from possessing firearms and requires purchasers to undergo background checks and obtain a permit before buying a pistol or a semiautomatic military-style assault weapon ("SAMSAW"). *Id*. at 10 of 31 (¶ 40).

Before an FFL can sell a firearm to someone other than another FFL, the FFL must subject the buyer to a criminal background check, examine the buyer's identification, and record the sale on a firearms transaction record, known as ATF Form 4473. *Id*. at 10 of 31 (¶ 42). ATF Form 4473 makes it clear to both the FFL and the prospective buyer that the FLL cannot sell the firearm to someone who is not the actual transferee/buyer of the firearm. *Id*. at 10-11 of 31 (¶ 43). By selling a firearm to a straw purchaser, the FFL violates the GCA, even if the FFL has complied with federal background check requirements. *Id.* at 13 of 31 (¶ 48). Federal law forbids an FFL to transfer the firearm to someone whose use, carrying, and possession would constitute a felony. *Id*. at 13 of 31 (¶ 49) (citing 18 U.S.C. §

933(1)(1)). The GCA expressly criminalizes the straw purchasing of firearms, making the straw purchaser ineligible to receive a firearm under federal law. ECF Doc. 1-1, Complaint at 11 of 31 (¶ 44) (citing 18 U.S.C. § 932(b)). Minnesota law similarly prohibits straw purchasing of firearms. *Id*. at 11-12 of 31 (¶ 45) (citing Minn. Stat. §§ 624.7133 and 624.7132, subd. 15(a)(4)).

Straw purchasers often betray themselves by their behavior. The "red flags" suggesting straw purchases include:

- Multiple firearm purchases in a single transaction or separate one-gun transactions in short periods of time, particularly of multiple firearms of similar make, model, and caliber;
- Multiple handgun purchases, particularly 9mm caliber handguns as they are the most frequently recovered crime guns;
- Purchasing firearms with cash;
- The buyer is accompanied to the store by others who leave before the transaction or do not purchase firearms themselves;
- The buyer uses phone calls, text messages, or other means to communicate with others about which firearms to purchase;
- The buyer does not keep the firearms in their residence for their own use; and
- A short "time to crime"—the time between the purchase of the firearm and the recovery of the firearm by police in connection with a crime.

ECF Doc. 1-1, Complaint at 12 of 31 (¶ 46). The ATF considers three years between a firearm's purchase and its recovery in connection with a crime to be a short time-to-crime and a significant indicator of gun trafficking. *Id*.

An FFL must do more than simply run a criminal background check on a potential purchaser of a firearm. *Id*. at 13 of 31 (¶ 48). It determines the lawfulness of the sale and maintains proper records of the transaction. *Id*. An FFL must certify its belief that the transaction is not unlawful. *Id*. at 13 of 31 (¶ 47). An FFL is required to stop the transaction if there is reasonable cause to believe the buyer is legally prohibited from receiving or possessing a firearm. *Id*. at 13 of 31 (¶ 48). An FFL who transfers a firearm to someone legally ineligible to receive it violates federal and state gun control laws. *Id*. at 13-14 of 31 (¶¶ 49-50) (18 U.S.C. § 933(a)(1) and quoting Minn. Stat. § 624.7132, subd. 15(a)(2)).

Section 923(g)(3)(A) of the United States code requires an FFL to report all transactions in which an unlicensed buyer purchases two or more handguns within five business days on ATF Form 3310.4 ("Form 3310.4"). *Id*. at 14 of 31 (¶ 51). One copy of Form 3310.4 goes to the ATF. *Id.* A second copy of Form 3310.4 goes to the Chief Local Law Enforcement Official ("CLEO") designated to receive the form. *Id*. A third copy is retained and attached to a Form 4473. *Id*. Federal regulations, specifically 27 C.F.R. §§ 478.123(b) and 478.125(e) require firearms dealers to maintain a record of all transactions with unlicensed persons in an acquisition and disposition book. *Id*. at 14 of 31 (¶ 52). An FFL violates federal law by knowingly making false statements or misrepresentations, failing to make

appropriate entries in, failing to properly maintain acquisition and disposition records, firearms transaction records, or reports of multiple handgun sales. ECF Doc. 1-1, Complaint at 14 of 31 (¶ 52).

Federal law enlists the help of firearms dealers and manufacturers in detecting illegal transactions and trafficking when a firearm is used unlawfully. *Id*. at 14 of 31 (¶ 53). A law enforcement agency that recovers a firearm at a crime scene or in the course of a criminal investigation may request a trace report from the ATF's National Tracing Center ("the NTC"). *Id*. The NTC tracks a firearm's path from its manufacturer through the distribution chain to the last retail sale transaction between the firearms dealer and the purchaser. *Id*. at 15 of 31 (¶ 53). Firearms dealers know which transactions, types of guns, and purchasers are potentially involved in criminal activity because federal law and regulations require them to provide information from their records about crime guns. ECF Doc. 1-1, Complaint at 15 of 31 (¶ 53).

Firearms dealers must know the federal firearms laws and regulations. *Id*. at 15 of 31 (¶ 54). The ATF reviews the applicable laws and regulations with firearms dealers when they receive their licenses and during ATF audits. *Id*. When an audit concludes, the ATF requires firearms dealers to certify their acknowledgment of federal laws and regulations. *Id*. That acknowledgement includes the certification that the firearms dealer has reviewed the laws and regulations regarding: (i) the completion and maintenance of firearm transaction records; (ii) the conduct of

transfers between firearms dealers; (iii) the business of firearm dealing, and (iv) straw purchasing. ECF Doc. 1-1, Complaint at 15 of 31 (¶ 54).

### B. Factual Allegations supporting Fleet Farm's Legal Culpability

Fleet Farm should have known that Horton was a straw purchaser of firearms, including the Pistol, which was among 24 firearms that it sold him in a four-month period. *Id*. at 15-17 of 31 (¶ 55). It sold Horton multiple handguns as part of the same transaction, typically handguns of the same caliber, on five different days. *Id*. at 17 of 31 (¶ 56). The purchases were of an unusually high volume, suggesting they were made for others and not Horton personally. ECF Doc. 1-1, Complaint at 17 of 31 (¶ 57). In fact, Fleet Farm sold Horton so many guns over such a short period that it had to file additional paperwork with the ATF. *Id*. (¶ 58). Many of the guns were 9mm handguns. *Id*. Horton also staggered his purchases of single handguns within days or weeks of each other from different Fleet Farm locations. *Id*. Fleet Farm's surveillance video showed Horton using his cell phone to take photographs or video of at least one handgun purchase. *Id*. at 17-18 of 31 (¶ 59). The suspicious character of these purchases should have told Fleet Farm that Horton was a straw purchaser who unlawfully trafficked in firearms. *Id*. at 18 of 31 (¶ 60).

Horton was indeed a straw purchaser in firearms who illegally trafficked in them. *Id*. at 18 of 31 (¶ 61). He transferred six of the 24 guns he purchased from Fleet Farm to Gabriel Young-Duncan ("Young-Duncan"), who kept the firearms for further transfer to other persons. *Id*. In March of 2022, Horton pleaded guilty to one

count of false statements in the purchase of firearms and was sentenced to 25 months in prison for his part in the straw purchase scheme. ECF Doc. 1-1, Complaint at 19 of 31 (¶ 64). On May 25, 2022, Young-Duncan pleaded guilty to conspiring to make false statements to buy guns and was sentenced to 40 months in prison for his part in the straw purchase scheme. *Id*. (¶ 63). Phillips was ineligible to possess firearms or ammunition when he used the Pistol at Truck Yard to injure Plaintiffs and to kill Wiley, given his prior felony conviction for aggravated first-degree robbery. *Id*. (¶ 62).

### C. Allegations of Fleet Farm's Negligence based on the Violation of Federal and State Gun Laws

Plaintiffs have sued Fleet Farm under three theories: common law negligence, negligence per se, and negligent entrustment. *Id*. at 24-28 of 31 (¶¶ 85-107). They incorporate the complaint's detailed factual allegations into each of the three liability counts. *Id*. at 24 of 31 (¶ 85), 25 of 31 (¶ 93), 26 of 31 (¶ 100). Each of these claims is well pleaded.

#### 1. Negligence

Fleet Farm should have known that Horton was a straw purchaser of firearms who was likely to purchase firearms for others and that the firearms would likely be used in criminal activity. *Id*. at 24 of 31 (¶ 86). Horton's purchasing behavior was highly suspicious. *Id*. at 12 of 31 (¶ 46); 15-18 (¶¶ 55-60). Indeed, Horton's purchasing behavior was suspicious enough to have indicated his status as a straw purchaser well before he purchased the Pistol. *Id*. at 15-17 of 31 (¶ 55).

Had Fleet Farm exercised reasonable care in noting the suspicious character of Horton's purchasing behavior and watching for the "red flags" suggestive of straw purchase, the Pistol would never have been sold to Horton and would not have done the damage it did. Fleet Farm's common law negligence in this regard had the effect of aiding and abetting Horton in his violations of federal and state gun control laws and regulations. *Id*. at 24-25 of 31 (¶¶ 89-90). Fleet Farm's negligence caused Plaintiffs very real and substantial damage. *Id*. at 25 of 31 (¶ 92).

**2. Negligence per se**

Fleet Farm behaved negligently simply by selling guns, including the Pistol, to Horton, a straw purchaser, in violation of federal and state law and related federal regulations. *Id*. at 25 of 31 (¶ 94). The whole point and purpose of these laws and regulations is to prevent persons ineligible to receive firearms from having them and using them to hurt others. *Id*. at 25-26 of 31 (¶ 96). By violating them, Fleet Farm injured the very class of people these laws were enacted to protect. *Id*. at 26 of 31 (¶¶ 96-97). These statutory violations had the effect of aiding and abetting Horton in his violations of federal and state gun control laws and regulations. *Id*. at 26 of 31 (¶ 97)

**3. Negligent entrustment**

Horton should not have been allowed to make straw purchases. *Id.* at 13 of 31 (¶ 48) By failing to stop his straw purchases, Fleet Farm was negligent in entrusting guns to Horton, whose unlawful trafficking in guns put the Pistol in Phillips's hands, resulting in Plaintiffs' injuries and Marquisha Wiley's untimely

death. *Id* at 27-28 of 31 (¶¶ 101-107). The negligent entrustment claim, like the negligence and negligence per se claims, rests on Fleet Farm's alleged violation of federal and state gun control laws, which prevent firearms sales to straw purchasers, such as Horton.

## LEGAL ARGUMENT

### I. Rule 12(b)(6) of the Federal Rules of Civil Procedure and interpretive case law governs this motion.

Rule 8(a) of the Federal Rules of Civil Procedure requires every claim for relief to include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed.R.Civ.P. 8(a) (2024). Fleet Farm moves to dismiss Plaintiffs' complaint under Rule 12(b)(6) of the Federal Rules of Civil Procedure, which provides for the dismissal of a complaint that fails "to state a claim upon which relief can be granted…." Fed.R.Civ.P. 12(b)(6). In deciding such a motion, the Court considers all facts alleged in the complaint as true to determine whether it states a "claim that is plausible on its face." *Braden v. Wal-Mart Stores, Inc.*, 588 F.3d 585, 594 (8th Cir. 2009) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678, 129 S.Ct. at 1949. In considering a motion under Rule 12(b)(6), the Court accepts the facts alleged in the complaint as true and draws all reasonable inferences from them in favor of the nonmoving party. *United States v. Any & All*

*Radio Station Transmission Equip*., 207 F.3d 458, 462 (8th Cir. 2000). The Court also may consider "those materials that are necessarily embraced by the pleadings." *Schriener v. Quicken Loans, Inc.*, 774 F.3d 442, 444 (8th Cir. 2014).

The Court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Papasan v. Allain*, 478 U.S.2d 265, 286, 106 S.Ct. 2932, 2944, 92 L.Ed.2d 209 (1986). While a complaint "does not need detailed factual allegations," it must include more "than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do…." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, 127 S.Ct. 1955, 1965, 167 L.Ed.2d 929 (2007).

Fleet Farm urges this Court to dismiss all claims under Rule 12(b)(6) for various reasons. ECF Doc. 24, Memorandum at 16-28 of 31. It argues that the PLCAA preempts Plaintiffs' negligence and negligent entrustment claims, both of which include "aiding and abetting" as a component part. *Id.* at 16-22 of 31; *cf.* ECF Doc. 1-1, Complaint at 24-25 of 31 (¶ 89), 26 of 31 (¶ 97) (alleging aiding and abetting as components of negligence and negligence per se claims). Fleet Farm also argues that all of Plaintiffs' claims should be dismissed, either for legal reasons or for lack of legally sufficient fact pleading for purposes of Rule 8(a) of the Federal Rules of Civil Procedure. ECF Doc. 24, Memorandum at 22-38 of 39. The United States District Court for the District of Minnesota, the Honorable John R. Tunheim presiding, rejected all of those arguments in related litigation brought by the State against Fleet Farm. *See* ECF Doc. 36, Memorandum Opinion and Order, *State of Minnesota v. Fleet Farm LLC, et al*, Case: 0:22-cv-02694 (D.Minn.

June 27, 2023). Plaintiffs respectfully ask this Court to follow Judge Tunheim's reasoning, which is correct according to law for the reasons set forth in this opposition memorandum.

**II. The PLCAA does not preempt Plaintiffs' Negligence and Negligent Entrustment Claims.**

In 2005, the United States Congress wanted to insulate the gun industry from lawsuits seeking damages from gun manufacturers, distributors, dealers, and importers due to third-party misuse of firearms, which operated as designed and intended. 15 U.S.C. § 7901(a)(3) (2024). So, it passed the PLCAA in part "[t]o prohibit causes of action against manufacturers, distributors, dealers, and importers of firearms or ammunition products . . . for harm caused by the criminal or unlawful misuse of firearm products or ammunition products by others when the product functioned as designed and intended." 15 U.S.C. § 7901(b)(1). The PLCAA forbids a "qualified civil liability action" from being "brought in any Federal or State Court." 15 U.S.C. § 7902(a). A "qualified civil liability action" is broadly defined in relevant part as "a civil action or proceeding . . . brought by any person against a manufacturer or seller of a qualified product . . . for damages . . . resulting from the criminal or unlawful use of a qualified product by the person or a third party…." 15 U.S.C. § 7903(5)(A). A "qualified product" includes a firearm. 15 U.S.C. § 7903(4). Thus, the PLCAA generally prohibits anyone damaged by the criminal use of a firearm that functions as designed from suing the firearm's seller for damages.

This prohibition is subject to six exceptions. 15 U.S.C. § 7903(5)(A)(i)-(vi). Two of them are germane to Fleet Farm's motion. A "qualified civil liability action" does not include:

> (ii) an action brought against a seller for negligent entrustment or negligence per se;
>
> (iii) an action in which a . . . seller of a [firearm] knowingly violated a State or Federal statute applicable to the sale or marketing of the [firearm], and the violation was a proximate cause of the harm for which relief is sought, including—
>
> > (I) any case in which the . . . seller knowingly made any false entry in, or failed to make appropriate entry in, any record required to be kept under Federal or State law with respect to the [firearm], or aided, abetted, or conspired with any person in making any false or fictitious oral or written statement with respect to any fact material to the lawfulness of the sale or other disposition of a [firearm]; or
> >
> > (II) any case in which the . . . seller aided, abetted, or conspired with any other person to sell or otherwise dispose of a qualified product, knowing or having reasonable cause to believe, that the actual buyer of the qualified product was prohibited from possessing or receiving a firearm . . . under subsection (g) or (n) of section 922 of title 18….

15 U.S.C. §7903(5)(A)(ii) and (iii). Section 7903(A)(iii) is known as the "predicate exception" because "its operation requires an underlying or predicate statutory violation." *City of New York v. A-1 Jewelry & Pawn, Inc.*, 247 F.R.D. 296, 351 (E.D.N.Y. 2007). To avoid dismissal under the predicate exception, the plaintiff must both "present a cognizable claim" and "allege a knowing violation of a 'predicate statute.'" *Ileto v. Glock, Inc.*, 565 F.3d 1126, 1132 (9th Cir. 2009) (citing *City of New York v. Beretta U.S.A. Corp.*, 524 F.3d 384, 390 (2d Cir. 2008)). The

predicate statute must regulate the firearms industry specifically.[1] *Beretta*, 524 F.3d at 404. It takes but one applicable PLCAA exception to allow the entire case to proceed to discovery because the PLCAA defines a "qualified civil liability action" and the exceptions thereto in terms of "an action," as opposed to individual claims. *Chiapperini v. Gander Mountain Co., Inc.*, 13 N.Y.S.3d 777, 787 (Monroe Co., Sup.Ct. 2014).

### A. The PLCAA does not preempt Plaintiffs' common law negligence claim, which is predicated on Fleet Farm's negligence in recognizing and stopping the straw purchase of firearms, which federal and state gun laws forbid.

Fleet Farm argues that the PLCAA preempts Plaintiffs' common law negligence claim. *See* ECF Doc. 24 at 18-19 of 39 (citing *Ileto*, 565 F.3d at 1135; *Jefferies v. Dist. of Columbia*, 916 F.Supp.2d 42, 46-47 (D.D.C. 2013); *Estate of Kim v. Coxe*, 295 P.3d 380, 386-88 (Alaska 2013); *Delana v. CED Sales, Inc.*, 486 S.W.2d 316, 321 (Mo. 2016)). All of the cases upon which Fleet Farm relies for this argument are distinguishable from the case at bar. In *Ileto*, the plaintiffs did not "allege that the defendants violated any statute prohibiting manufacturers or sellers from aiding, abetting, or conspiring with another person to sell or otherwise dispose of firearms to illegal buyers." *Ileto*, 565 F.3d 1126, 1130 (9th Cir. 2009). Similarly, in *Jefferies*, the plaintiff merely made the "blanket assertion that [the defendant's]

[1] A "predicate statute" can include even a state statute like the Connecticut Unfair Trade Practices Act ("CUPTA"), a state consumer protection law applicable to the sale or marketing of firearms, among other products. *See Soto v. Bushmaster Firearms International, LLC*, 331 Conn. 53, 116-19, 202 A.3d 262, 300-02 (2019).

negligence directly and/or indirectly contributed to Ms. Jones' death, and that [the defendant] owed a duty of care to Ms. Jones." *Jefferies*, 916 F.Supp.2d at 46. Likewise, in *Estate of Kim*, the plaintiff merely alleged that the defendant "negligently or illegally provided Coday [with] the rifle." *Estate of Kim*, 295 P.3d at 384. In *Delana*, the plaintiff's negligence claim did not allege claims against the defendants under any of the exceptions to the PLCAA's definition of "qualified civil liability action," but asserted "that [the defendants] had a 'heightened duty of care' with respect to the sale of 'legal instrumentalities.'" 486 S.W.3d at 321. The claims involved in each of those actions are fundamentally different than the one before the Court in this case.

The PLCAA does not preempt all claims based on the common law, but any claims (common law or statutory) that are not predicated on the violation of federal or state laws regulating the sale of firearms. Plaintiffs' complaint observes that both the GCA and the MGCA forbid the straw purchase of firearms. ECF Doc. 1-1, Complaint at 13-14 of 31 (¶¶ 49-50). It alleges further that various "red flags" suggest the straw purchase of a firearm, and that Fleet Farm was negligent for failing to recognize those red flags when it came to Horton's straw purchases. *Id*. at 15-18 of 31 (¶¶ 55-60), 24 of 31 (¶¶ 85-88). Most importantly, Plaintiffs' Complaint alleges that Fleet Farm was negligent because "it *knew*, or consciously avoided knowing, Horton was engaged in unlicensed dealing, firearms trafficking, and/or straw purchasing." *Id.* at 24 (¶ 88) (emphasis added).

"Aiding and abetting" is not alleged as a separate theory of recovery, but is part and parcel of Plaintiffs' common law negligence claim against Fleet Farm. *Id.* at 24-25 of 31 (¶¶ 89-90). Paragraph 57 of the complaint alleges: "The sheer volume of Horton's purchases put Fleet Farm on notice he was not making bona fide purchases for himself but was instead straw purchasing firearms for others." ECF Doc. 1-1, Complaint at 17 of 31 (¶ 57). Paragraph 89 alleges: "FLEET FARM further breached its duty by engaging in conduct that knowingly violated, and aided and abetted the violation of, numerous federal laws and regulations, including 18 U.S.C. §§ 922(a)(1), 922(a)(6), 922(m), 923(a), 924(a)(1)(A), 924(a)(1)(D), 924(a)(3), and 27 C.F.R. §§ 478.21(a), 478.124(c)(1), and 478.124(c)(5)." *Id.* at 24-25 (¶ 89). Thus, Fleet Farm argues disingenuously that Plaintiffs have not alleged that Fleet Farm knew about Horton's false statements on ATF Form 4473. ECF Doc. 24, Memorandum at 22 of 39.

Similarly, Fleet Farm argues that that Plaintiffs have not properly alleged a legally valid aiding and abetting claim because they have not alleged that Horton was ineligible to purchase a firearm for purposes of Section 922(g) or Section 922(n) to Title 18. *Id*. Plaintiffs do not need to make that allegation in order for their negligence claim to properly allege that Fleet Farm aided and abetted Horton in making straw purchases and related false statements. It was unlawful for Horton to make the straw purchases under federal and state law. ECF Doc. 1-1, Complaint at 11-12 of 31 (¶¶ 44-45) (citing 18 U.S.C. § 932(b), Minn. Stat. § 624.7133, and Minn. Stat. § 624.7132, subd. 15(a)(4)). Thus, Plaintiffs' common law negligence

claim, including its aiding and abetting component, is predicated on the violation of federal and state gun laws that prohibit the straw purchase of firearms. Because these allegations fall within the predicate exception to the PLCAA's definition of a "qualified civil liability action," this Court is compelled to deny Fleet Farm's motion as it relates to Plaintiffs' common law negligence claim.

### B. Plaintiffs' negligent entrustment claim survives preemption because only one claim needs to survive preemption in order for Plaintiffs' entire action to proceed.

Fleet Farm argues that the PLCAA preempts Plaintiffs' negligent entrustment claim because it does not fit within the negligent entrustment exception to the PLCAA's definition of a "qualified civil liability action." ECF Doc. 24 at 20-21 of 39. Citing *Soto v. Bushmaster Firearms Int'l, LLC*, 2016 WL 8115354 at *14 (Conn.Super.Ct. Oct. 14, 2016). Fleet Farm argues that the negligent entrustment exception applies "only where a negligent entrustment claim arises from 'initial transfers completed between the original seller and purchaser of a gun,' not 'secondary transfers even when the original seller is [alleged to be] aware of the purchaser's intent to resell to a particular individual.'" *Id*. at 20 of 39 (citations omitted). Fleet Farm's position is that the negligent entrustment must be made directly to the shooter. *Id*. at 21 of 39 (citation omitted).

Judge Tunheim actually agreed with this argument in the State's action against Fleet Farm. However, Judge Tunheim found that the negligent entrustment claim would remain since only one claim must survive preemption analysis for the entire action to move forward. *See* ECF Doc. 36, Memorandum, Opinion, and

Order at 25 of 37, *State of Minnesota v. Fleet Farm, LLC et al.*, Case: 0:22-cv-02694-JRT-JFD (June 27, 2023). Yet, characteristic of Fleet Farm's "take-no-prisoners" approach to litigation, Fleet Farm opportunistically urges this Court to pay no attention to Judge Tunheim's decision because "'one district court is not bound by the holdings of others, even those within the same district.'" ECF Doc. 24, Memorandum at 11 of 39 n.1 (quoting *Southeastern Stud & Components, Inc. v. American Eagle Design Build Studios, LLC*, 588 F.3d 963, 967 (8th Cir. 2009)). This argument is rather curious. If Judge Tunheim's memorandum, opinion, and order in the State's action against Fleet Farm does not bind this Court, then this Court need not defer to Judge Tunheim's construction of the PLCAA's negligent entrustment exception to the definition of "qualified civil liability action." After all, that construction is based upon the unpublished decision of the Connecticut Superior Court, which found the language of the negligent entrustment exception to be ambiguous. *Soto v. Bushmaster Firearms International, LLC*, 2016 WL 8115354 *13 (Conn.Super. Oct. 14, 2016). Fleet Farm has cited no decisions of any federal appellate courts holding that the negligent entrustment exception is ambiguous, requiring resort to legislative history.

The Supreme Court of Connecticut affirmed the superior court's determination that a claim for negligent entrustment would not lie, not because the negligent entrustment exception is ambiguous, but because *Connecticut law* recognizes a claim for negligent entrustment *only when* the entrustor knows or has reason to know that the direct entrustee is likely to use a dangerous instrumentality in an

unsafe manner. *Soto v. Bushmaster Firearms International, LLC*, 331 Conn. 53, 82, 202 A.3d 262, 282 (2019) ("We decline the plaintiffs' invitation to stretch the doctrine of negligent entrustment so far beyond its historical moorings."). As discussed below (and as Judge Tumheim determined in the State's action against Fleet Farm), Minnesota's law of negligent entrustment is sufficiently broad to encompass an actionable claim.

The negligent entrustment exception to the definition of "qualified civil liability action" is not ambiguous. The PLCAA authorizes actions for negligent entrustment. The contours of negligent entrustment are defined by Minnesota law, which defines negligent entrustment in a manner sufficient to encompass the factual allegations made here. Plaintiffs' negligent entrustment claim is not preempted. Therefore, Fleet Farm's motion to dismiss should be denied with respect to that claim.

## III. Plaintiffs have stated plausible claims for negligence, negligence per se, and negligent entrustment under Minnesota law.

Unable to establish that Plaintiffs' cause of action requires dismissal under the PLCAA on preemption grounds, Fleet Farm attacks the manner in which Plaintiffs have pleaded their claims for negligence, negligence per se, and negligent entrustment under Minnesota law. ECF Doc. 24, Memorandum at 22-39 of 39. Each of Fleet Farm's arguments is legally flawed and fails for that reason. Plaintiffs address them here in the order of their occurrence.

### A. Negligence

"Negligence" is the doing of something that an ordinarily prudent person would not do or the failure to do something which an ordinarily prudent person would do under like or similar circumstances. *Erickson v. Van Web Equipment Co.*, 270 Minn. 42, 49, 132 N.W.2d 814, 819 (1965). It consists of four elements: duty, breach, proximate cause, and injury. *Gradjelick v. Hance*, 646 N.W.2d 225, 230 (Minn. 2002) (citing *Lubbers v. Anderson*, 539 N.W.2d 398, 401 (Minn. 1995). Fleet Farm argues that Plaintiffs' negligence claim should be dismissed because they have not alleged a recognized common law duty of care. ECF Doc. 24, Memorandum at 22-24 of 39. Fleet Farm is mistaken to put it charitably.

"As a general rule, 'a person does not owe a duty of care to another . . . if the harm is caused by a third party's conduct.'" *Fenrich v. The Blake School*, 920 N.W.2d 195, 201 (citing *Doe 169 v. Brandon*, 845 N.W.2d 174, 177-78 (Minn. 2014)). This general rule is subject to two exceptions. Such a duty of care exists "when there is a special relationship between a plaintiff and a defendant and the harm to the plaintiff is foreseeable." *Doe 169*, 845 N.W.2d at 178. Such a duty of care also exists when "the defendant's own conduct creates a foreseeable risk of injury to a foreseeable plaintiff." *Domagala v. Rolland*, 805 N.W.2d 41, 23 (Minn. 2011). Fleet Farm's alleged conduct in selling firearms to Horton gives rise to a duty under the second exception to the general rule.

Federal law forbids a person, such as Horton, from making a straw purchase of a firearm. 18 U.S.C. 932(b) (straw purchases unlawful). Horton pleaded guilty to one count of false statements in the purchase of firearms and was sentenced to

25 months in prison for his part in the straw purchase scheme. ECF Doc. 1-1, Complaint at 19 of 31 (¶ 64). The Attorney General of the United States is legally authorized to prescribe rules and regulations necessary to carry out the provisions of GCA. 18 U.S.C. § 926(a). Section 478.124(a) of Title 27 to the Code of Federal Regulations requires every FFL, including Fleet Farm, to use ATF Form 4473 to record the transaction of a firearm sale. 27 CFR § 478.124(a) (2024). ATF Form 4473 plainly provides that an FFL, such as Fleet Farm, cannot transfer any firearm to a straw purchaser. ECF Doc. 1-1, Complaint at 11 of 31 (¶ 43). It must stop the transaction if it has reason to believe that the transferee/buyer is prohibited from receiving a firearm. *Id*. at 13 of 31 (¶ 48). Minnesota statutes impose criminal liability for the sale of firearms to straw purchasers. *Id*. at 13-14 of 31 (¶ 50). To assure that firearms are not sold to straw purchasers, an FFL, such as Fleet Farm, must recognize the proverbial “red flags,” which suggest a straw purchase. *Id*. at 12 of 31 (¶ 46).

Both the volume of, and the circumstances under which, Horton made his firearms purchases showed he was not a bona fide purchaser of firearms for himself. Horton’s purchasing behavior was highly suspicious given its volume and character. ECF Doc. 1-1, Complaint at 12 of 31 (¶ 46); 15-18 (¶¶ 55-60). Indeed, Horton’s purchasing behavior was suspicious enough to have indicated his status as a straw purchaser well before he purchased the Pistol. *Id*. at 15-17 of 31 (¶ 55). Had Fleet Farm exercised reasonable care in noting the suspicious character of Horton’s purchasing behavior and watching for the “red flags” suggestive of straw

purchase, the Pistol would never have been sold to Horton and would not have done the damage it did. Fleet Farm's common law negligence in this regard had the effect of aiding and abetting Horton in his violations of federal and state gun control laws and regulations. *Id*. at 25 of 31 (¶ 90). Fleet Farm's negligence caused Plaintiffs' very real and substantial damage. *Id*. at 25 of 31 (¶ 92).

Assuming the alleged facts to be true, the sale of firearms to people Fleet Farm has reason to believe are straw purchasers creates a foreseeable risk of injury. That risk is evident from the myriad of regulations, training, and resources that the ATF provides to Fleet Farm and other FFLs to identify and prevent straw purchases. It is disingenuous for Fleet Farm to argue otherwise. Consequently, Fleet Farm's motion to dismiss Plaintiffs' negligence claim must be denied because Plaintiffs have alleged a plausible negligence claim against Fleet Farm for failing to exercise reasonable care to avoid selling firearms to straw purchasers engaged in illegal gun trafficking.

### B. Negligence Per Se

"Negligence per se" is a "form of ordinary negligence that results from a violation of a statute." *Seim v. Garavalia*, 306 N.W.2d 806, 810 (Minn. 1981). The statutory violation "gives rise to negligence per se if the persons harmed by that violation are within the intended protection of the statute and the harm suffered is the type the legislation was intended to prevent." *Pacific Indemnity Co. v. Thompson-Yaeger, Inc.*, 260 N.W.2d 548, 558 (Minn. 1977), *superseded by statute on other grounds*, Minn. Stat. § 541.051 (2020)). A per se negligence rule

substitutes a statutory standard of care for the ordinary prudent person standard of care, such that a violation of a statute (or an ordinance or regulation adopted under statutory authority) is conclusive evidence of duty and breach. *Hance*, 646 N.W.2d at Footnote 3. "Such statutes are often penal statutes that do not provide for a civil action. *Seim*, 306 N.W.2d at 810. Negligence per se may exist when the reasonable person standard is supplanted by a standard of care established by the legislature. *Id.* A legislative enactment can be evidence of negligence if:

> (1) the intent of the statute is to protect a class of which plaintiff is a member, but only if (2) the plaintiff's injury involves an invasion of the particular interest protected by the statute, (3) was caused by the particular hazard or form of harm against which the enactment was designed to give protection and (4) it was proximately caused by its violation.

*Johnson v. Farmers and Merchants State Bank of Balaton*, 320 N.W.2d 892, 897 (1982) (*Standafer v. First National Bank of Minneapolis*, 236 Minn. 123, 52 N.W.2d 718 (1952); *Hondl v. Chicago Great Western Railway Co.*, 249 Minn. 306, 82 N.W.2d 245 (1957); *LaBelle v. Swanson*, 248 Minn. 35, 78 N.W.2d 358 (1956); Restatement (Second) of Torts § 286 (1965)). In sum, "breach of a statute gives rise to negligence per se if the persons harmed by that violation are within the intended protection of the statute and the harm suffered is of the type the legislation was intended to prevent." *Pacific Indem. Co. v. Thompson-Yaeger, Inc.*, 260 N.W.2d 548, 558 (Minn. 1977).

As alleged in the complaint and summarized above, the GCA and the MGCA prohibit the sale of firearms to straw purchasers. Federal firearms laws prevent

crime by keeping guns out of the hands of certain people who have a heightened risk of misusing firearms, such as minors, persons with felony convictions, and domestic abusers. ECF Doc. 1-1, Complaint at 10 of 31 (¶ 40) (citing 18 U.S.C. §§ 921 *et seq.*). The same may be said for the MGCA, which reflects the purpose of the CCA by establishing categories of people prohibited from possessing firearms. *Id*. (citing Minn. Stat. §§ 624.713 and 624.7131). Furthermore, specific types of firearms – pistols – are the focus of the MGCA. Minn. §§ 624.711 (Declaration of Policy).

In Plaintiffs' case, Fleet Farm violated the GCA and the MGCA by selling firearms to a straw purchaser. These laws, as noted, were intended to prevent harm to potential victims of gun violence at the hands of ineligible persons via straw purchasers. Once Fleet Farm sold the firearms to the straw purchasers, they were transferred to ineligible persons who perpetrated gun violence against Plaintiffs.

Furthermore, it is immaterial that various provisions of the GCA and the MGCA cited throughout Plaintiffs' complaint do not specifically create private rights of action. As noted above, laws that set the standard for a negligence per se action are often penal statutes that do not provide for a civil action. "Negligence per se based on violation of a penal statute is similar to actual negligence based on common law principles… in both cases, the failure to perform a legal duty constitutes negligence." *Kronzer v. First Nat. Bank of Minneapolis*, 235 N.W.2d 187, 192 (Minn. 1975).

Fleet Farm cites the *Kronzer* decision for the premise that the GCA and MGCA – like Minn. Stat. § 481.02 in the *Kronzer* case – are not aimed at protecting the interests of a sufficiently specific group. However, and as noted by Judge Tunheim, the language cited by Fleet Farm is mere dicta and the Minnesota Supreme Court did not ultimately decide the issue of whether the statute Plaintiff relied upon in that case could provide for a negligence per se standard in *Kronzer*. *See* ECF Doc. 36, Memorandum, Opinion, and Order at 36 of 37, *State of Minnesota v. Fleet Farm, LLC et al.*, Case: 0:22-cv-02694-JRT-JFD (June 27, 2023).

Here, Plaintiffs have plausibly stated a negligence per se claim, wherein the statutory requirements of the GCA and MGCA establish the duty of care owed by Fleet Farm under the circumstances. Consequently, Fleet Farm's motion to dismiss Plaintiffs' negligence per se claim must be denied.

### C. Aiding and Abetting as a Component of Negligence

As noted above, "aiding and abetting" is a component of Plaintiffs' negligence and negligence per se claims. ECF Doc. 1-1, Complaint at 24-25 of 31 (¶¶ 89-90), 26 of 31 (¶ 97). The Supreme Court of Minnesota has held that aiding and abetting another person's tortious conduct involves three elements: "(1) the primary tort-feasor must commit a tort that causes injury to the plaintiff; (2) the defendant must know that the primary tort-feasor's conduct constitutes a breach of duty; and (3) the defendant must substantially assist or encourage the primary tort-feasor in the achievement of the breach." *Witzman v. Lehrman, Lehrman &*

*Flom*, 601 N.W.2d 179, 187 (Minn. 1999). Knowledge and assistance are evaluated in tandem, meaning that a greater showing of scienter is required when there is a minimal showing of substantial assistance. *Id*. at 188 (citing *Camp v. Dema*, 948 F.2d 455, 459 (8th Cir. 1991)).

Plaintiffs have sufficiently pleaded "aiding and abetting" for purposes of both their common law negligence and negligence per se claims. Their complaint meets the first of the above three elements because Plaintiffs allege common law negligence by Fleet Farm's failure to exercise reasonable care to prevent straw purchases of firearms and negligence per se by Fleet Farm's sale of firearms to Horton, an admitted straw purchaser. ECF Doc. 1-1, Complaint at 24-26 of 31 (¶¶ 85-99). Plaintiffs allege that Horton's purchasing behavior was such that it reasonably put Fleet Farm on notice that his purchases were not legitimate, thereby satisfying the second element. ECF Doc. 1-1, Complaint at 17 of 31 (¶ 57).

Fleet Farm argues that the third element cannot be met because the routine professional service of selling firearms cannot constitute substantial assistance in the commission of a tort. ECF Doc. 24 at 32 of 39 (citing *Zayed v. Associated Bank, N.A.*, 779 F.3d 727, 733 (8th Cir. 2015) (*Zayed I*) and *Zayed v. Associated Bank, N.A.*, 913 F.3d 709, 715 (8th Cir. 2019) (*Zayed II*)). In *Zayed II*, the Eighth Circuit held that "[a] plaintiff must show more than 'awareness of the conduct in question…., that it raised 'red flags,'… or even that it amounted to gross negligence,' but must show that the defendant 'was aware of the *wrongfulness* of the challenged conduct." 913 F.3d at 715 (quoting *Varga v. U.S. Bank Nat. Ass'n*,

952 F.Supp.2d 850, 858 (D.Minn. 2013), *aff'd*, 764 F.3d 833 (8th Cir. 2014) (internal citations omitted)). But this holding must be understood in light of *Witzman's* requirement that actual knowledge and assistance be evaluated in tandem. *Witzman* 601 N.W.2d 188.

Plaintiffs' allegations demonstrate that the illegal sale of firearms to Horton provided more than minimal assistance in the illegal trafficking of a firearm to Phillips, someone who never should have possessed a firearm given his prior criminal conviction. Horton's purchases were suspicious enough to cause Fleet Farm to submit additional paperwork to the ATF because Horton's purchasing behavior indicated unlawful gun trafficking. ECF Doc. 1-1, Complaint at 17 of 31 (¶ 58). Given the federal regulatory framework that required Fleet Farm's submission of this documentation, and Fleet Farm's knowledge of those regulations and the purpose behind those regulations, Plaintiffs do not have to allege a high degree of knowledge on Fleet Farm's part that Horton actually was engaged in illegal gun trafficking. Plaintiffs' complaint allegations demonstrate a high degree of substantial assistance, which do not require a greater showing of scienter. *Cf. Witzman*, 601 N.W.2d at 188 (high degree of scienter must be shown when the showing of substantial assistance is *minimal*). Therefore, because Plaintiffs asserted plausible allegations of aiding and abetting as components of their negligence and negligence per se claims, Fleet Farm's motion to dismiss must be denied.

**D. Negligent Entrustment**

Negligent entrustment claims in Minnesota are governed by Section 390 of the Second Restatement of Torts. It provides:

> One who supplies directly or through a third person a chattel for the use of another whom the supplier knows or has reason to know to be likely because of his youth, inexperience, or otherwise, to use it in a manner involving unreasonable risk of physical harm to himself and others whom the supplier should expect to share in or be endangered by its use, is subject to liability for physical harm resulting to them.

*Axelson v. Williamson*, 324 N.W.2d 241, 244 (Minn. 1982) (quoting Restatement (Second) of Torts § 390 (1977)). Fleet Farm first argues, quoting *Johnson v. Johnson*, 611 N.W.2d 823, 826-27 (Minn.App. 2000), that Minnesota has never recognized a claim for negligent entrustment within the context of a sale. ECF Doc. 24, Memorandum at 33 of 39. That truism does not obligate this Court to dismiss Plaintiffs' negligent entrustment claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure. "If the Minnesota Supreme Court has not spoken on a particular issue, [federal courts] must attempt to predict how the Minnesota Supreme Court would decide an issue and 'may consider relevant state precedent, analogous decisions, considered dicta . . . and any other reliable data." *Integrity Floorcovering, Inc. v. Broan-Nutone, LLC*, 521 F.3d 914, 917 (8th Cir. 2008).

Minnesota's negligent entrustment cases involve the use of motor vehicles and similar conveyances, not guns. *See Johnson*, 611 N.W.2d at 824-25 (wrongful death action against sellers of a motor vehicle); *Axelson v. Williamson*, 324 N.W.2d 241, 242 (Minn. 1982) (wrongful death action against motor vehicle owner who permitted tortfeasor to operate it). Within that context, Minnesota courts hold that

a claim for negligent entrustment against a former owner will not lie for harm caused by the subsequent negligent operation of the motor vehicle. The rationale is that the tortfeasor's negligence is not reasonably foreseeable to the former owner, who having sold the vehicle to a licensed an insured driver exercised no more control over the motor vehicle. *Johnson*, 611 N.W.2d at 827.

Cases involving negligent entrustment claims against former owners of motor vehicles do not help this Court predict how the Minnesota Supreme Court might decide a negligent entrustment claim made against an FFL. Motor vehicle sales are not regulated in ways that resemble the laws and regulations applicable to the sale of firearms. Minnesota law does not prohibit the straw sale of automobiles, which typically are used for transportation not as weapons involved in the commission of crimes. Indeed, the Supreme Court of Minnesota has recently held that "[t]he question of whether to impose a legal duty is 'one of policy.'" *Smits as Trustee for Short v. Park Nicollet Health Services*, 979 N.W.2d 436, 445 (Minn. 2022) (quoting *Erickson v. Curtis Inv. Co.*, 447 N.W.2d 165, 169 (Minn. 1989)). The facts and circumstances of each case determine what risk is foreseeable. *Id*. (citing *Doe 169*, 845 N.W.2d at 179). "[W]hen the issue of foreseeability is not clear and reasonable persons might draw different conclusions based on the evidence presented, 'close cases' must be submitted to the jury." *Id*. (citing *Senogles v. Carlson*, 902 N.W.2d 38, 43 (Minn. 2017)).

Unlike automobiles, firearms often are used as instrumentalities in the commission of crimes, particularly criminal acts of violence committed against

other persons. For that reason, firearms sales are subject to regulatory schemes that in no way resemble laws applicable to the sale of motor vehicles. An FFL is required not only to conduct a criminal background check of the would-be purchaser, but is required to certify that sale is lawful, *e.g.*, is not a straw sale forbidden by both the GCA and the MGCA. ECF Doc. 1-1, Complaint at 13 of 31 (¶ 48). FFLs are empowered to stop firearm sales for any reason and are required to stop a firearms sale when there is reason to believe the purchaser is legally prohibited from receiving or possessing a firearm. *Id*. The reason is simple: Federal firearms laws, and parallel state laws, serve to prevent crime by keeping guns out of the hands of people who have a heightened risk of misusing them. *Id.* at 10 of 31 (¶ 40). Straw purchasers, like Horton, and intermediate traffickers, like Young-Duncan, are the conduit through which people like Phillips get firearms. Under these circumstances, the Minnesota Supreme Court likely would decide whether the harm inflicted on Marquisha Wiley and the Plaintiffs was or should have been foreseeable to Fleet Farm is not clear, and reasonable persons might draw different conclusions based on the evidence presented, making it a "close case." *Smits*, 979 N.W.2d at 445; *Segoles*, 902 N.W.2d at 43. Therefore, as a matter of state substantive law, Plaintiffs' negligent entrustment claim cannot be dismissed

for failure to state a claim for which relief can be granted and *must* be presented to a jury after reasonable discovery.

### C. Proximate Causation

Fleet Farm argues that Plaintiffs have failed to plead the proximate causation element integral to all of their negligence claims in a legally sufficient way. ECF Doc. 24, Memorandum at 35-38 of 39. In Minnesota, proximate cause requires "a showing that the defendant's 'conduct was a substantial factor in bringing about the injury.'" *Lubbers*, 539 N.W.2d at 401-02 (quoting *Flom v. Flom*, 291 N.W.2d 914, 917 (Minn. 1980)). "Generally, proximate cause is a question of fact for the jury" unless "reasonable minds can arrive at only one conclusion." *Id*. (citing *Wartnick v. Moss & Barnett*, 490 N.W.2d 108, 115 (Minn. 1992)).

Here, Phillips acquired the Pistol and used it to cause death and injury because two unlawful gun traffickers, Horton and Young-Duncan, made it available to him after Horton illegally purchased it. Unlike the plaintiff in *Hilligoss*, Plaintiffs do not claim Fleet Farm was negligent because it failed to protect them and Marquisha Wiley from third-party criminal activity. Were that the case, the PLCAA would preempt their claims. Plaintiffs, instead, claim that that Fleet Farm was negligent by failing to exercise reasonable care to prevent unlawful gun traffickers from acquiring firearms generally and the Pistol specifically through straw purchases. Fleet Farm failed to exercise a level of care (and control) that only Fleet Farm possessed because only Fleet Farm sold the guns. *See* ECF Doc. 1-1, Complaint at 15-17 (¶¶ 55-60). Fleet Farm cannot argue with a straight face that

the type of harm Phillips used the Pistol to inflict was not reasonably foreseeable to Fleet Farm, which found Horton's gun purchases sufficiently extraordinary so as to require additional reporting. *See id*. at 17 (¶ 58). Clearly that reporting was necessary because Fleet Farm understood that the character of Horton's purchases could be viewed as suggesting illegal gun trafficking. *See id*. Clearly, Plaintiffs have alleged proximate cause in a legally sufficient and plausible way.

Fleet Farm's objective in making its "proximate cause" argument becomes clear when one considers the non-Minnesota cases cites, particularly the *Sturm* decision from the State of New York. In *Sturm*, the Appellate Division of the New York Supreme Court held that the People of the State of New York could not legally allege a causal relationship between a gun manufacturer's marketing and distribution decisions and the creation of a public nuisance due to gun violence because:

> (1) the harm plaintiff alleges is far too remote from defendants' otherwise lawful commercial activity to fairly hold defendants accountable for common law public nuisance; and (2) defendants' lawful commercial activity, having been followed by harm to person and property caused directly and principally by the criminal activity of intervening third parties, may not be considered a proximate cause of such harm.

*People v. Sturm, Ruger & Co., Inc.*, 309 A.D.2d 91, 103, 761 N.Y.S.2d 192, 201 (1st. Dept. 2003). The Illinois Supreme Court reached a similar conclusion in *Young v. Bryco Arms*, 213 Ill.2d 433, 455-56, 821 N.E.2d 1078, 1090-91 (2004). Fleet Farm is not satisfied with the broad protection afforded to firearms dealers under the PLCA. It wants complete immunity for violating federal gun laws and the

real harm that results from those violations. So it argues, based on non-Minnesota cases involving public nuisance claims, that what happened at Truck Park simply is too far removed from Fleet Farm's unlawful sale to a straw purchaser to sustain a causal relationship as a matter of law. This Court should decline Fleet Farm's invitation to use Rule 12(b)(6) of the Federal Rules of Civil Procedure as the vehicle for judicial legislation expanding the preemption already afforded by the PLCAA.

The situation alleged in Plaintiffs' well-pleaded complaint is not one that is at all analogous to a drug manufacturer getting sued by county governments seeking to recover the costs of dealing with a methamphetamine epidemic because cold medication provides criminals with the ingredients needed to cook their illegal substance. *See Ashley County Ark. v. Pfizer, Inc.*, 552 F.3d 659 (8th Cir. 2009) (affirming judgment on pleadings because the purchase of cold medicine and other items with the intent to make, produce, and distribute meth was not the proximate cause of drug manufacturer's sales). The situation alleged in Plaintiffs' complaint is one in which federal and state firearms laws make the straw purchase of firearms illegal due to the criminal behavior often associated with straw purchases. ECF Doc. 1-1, Complaint at 9-12 (¶¶ 38-45). FFLs, such as Fleet Farm, are trained in federal and state firearms laws, and federal and state authorities expect them to recognize the "red flags" of straw purchases of firearms in order to help prevent firearms from landing in the hands of people, like Phillips, who are not legally entitled to have them. *Id*. at 12-15 (¶¶ 47-54). Plaintiffs have

alleged proximate causation in a plausible and legally appropriate way. Therefore, Fleet Farm's motion to dismiss should be denied.

## CONCLUSION

The PLCAA does not preempt Plaintiffs' negligence claims, which are predicated on Fleet Farm's alleged violation of the GCA, the MGCA, and related federal regulations associated with the sale of firearms and conduct which aided and abetted Horton in the violation of those laws. Plaintiffs have plausibly alleged claims for negligence, negligence per se, and negligent entrustment against Fleet Farm in accordance with Minnesota law. Therefore, Fleet Farm's motion should be denied in all respects.

Respectfully submitted,

TEWKSBURY & KERFELD, P.A.

Dated: January 10, 2025

By: /s/ Peter E. Lind
Peter E. Lind (#063368)
Paul E. Darsow (#0285080)
88 South Tenth Street, Suite 300
Minneapolis, MN 55403
612-334-3399
plind@tkz.com
pdarsow@tkz.com

TSR INJURY LAW

Dated: January 10, 2025

By: /s/ Nathan H. Bjerke
Nathan H. Bjerke (#026670X)
Lyndsey R. Jorgensen (#0395456)
8300 Norman Center Drive, Suite 1275

Bloomington, MN 55437
952-832-5800
Nate@TSRInjurylaw.com
Lyndsey@TSRInjurylaw.com

LORD & HEINLEIN LAW OFFICE

Dated: January 10, 2025

By: /s/ Melissa M. Heinlein
Melissa M. Heinlein (#0393113)
Priscilla A. Lord (#0123754)
309 Clifton Avenue
Minneapolis, MN 55403
612-333-5673
melissa@mnlordlaw.com
priscilla@mnlordlaw.com

*Attorneys for Plaintiffs*